UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | No. 20 CR 750-5 |
| v. | |
| BRANKO ALEKSIC | Judge Nancy L. Maldonado |

## PLEA AGREEMENT

1.     This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant BRANKO ALEKSIC, and his attorneys, SAMI AZHARI and SERGEI KUCHINSKI, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2.     The superseding indictment in this case charges defendant with two counts of wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 4 and 7); and domestic concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count 21).

3.     Defendant has read the charges against him contained in the superseding indictment, and those charges have been fully explained to him by his attorneys.

4.     Defendant fully understands the nature and elements of the crimes with which he has been charged.

## Charges to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count 4, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343; and Count 21, which charges defendant with domestic concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

## Factual Basis

6.     Defendant will plead guilty because he is in fact guilty of the charges contained in Counts 4 and 21 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

a.     With respect to Count 4 of the indictment:

Beginning in or around March 2020, and continuing through in or around September 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, BRANKO ALEKSIC, together with codefendants Maja Nikolic, Marko Nikolic, Nebojsa Simeunovic, and Milica Sumakovic, knowingly devised, intended to devise, and participated in a scheme to defraud and to obtain money and property from the Economic Injury Disaster Loan ("EIDL") Program by means of materially false and fraudulent pretenses, representations, and promises; and on or about June 19, 2020,

2

for the purpose of executing the scheme, BRANKO ALEKSIC knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, an interstate wire transmission of approximately $149,900, from the Federal Reserve Bank to a Flowering Consulting account maintained at Chase Bank, which funds represented the proceeds of an EIDL to Flower Consulting, in violation of Title 18, United States Code, Section 1343.

ALEKSIC acknowledges that the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was a federal law enacted in March 2020 and designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. ALEKSIC further acknowledges that one source of relief provided by the CARES Act was the expansion of the EIDL program, which provided loan assistance (including advances of up to $10,000) for businesses with, among other things, 500 or fewer employees and other eligible entities. ALEKSIC acknowledges the EIDL program was designed to provide economic relief to small businesses that were experiencing a temporary loss of revenue.

ALEKSIC knew that, to gain access to funds through the EIDL Program, small businesses applied through the U.S. Small Business Administration ("SBA") via an online portal and application. ALEKSIC knew that the SBA required applicants to submit truthful information about the applying entity, its owner, and its condition prior to the COVID-19 pandemic, including the entity's number of employees as of

3

January 31, 2020; the entity's gross revenues and cost of goods sold for the 12-month period prior to January 31, 2020; the entity's type of business; and the date on which the current owner assumed ownership of the entity. ALEKSIC understood that applicants who received EIDL proceeds were required to use those proceeds to pay an array of working capital and normal operating expenses, such as continuation of health care benefits, rent, utilities, and fixed debt payments. ALEKSIC acknowledges that information about the EIDL applicants' business expenses and employees, and how the EIDL would be used, was material to the SBA's approval, terms, and funding of EIDL loans.

ALEKSIC learned of the scheme to defraud in approximately June 2020 from Marko Nikolic and Simeunovic, and met with Simeunovic and Marko Nikolic in the office of a business known as SIM Express in Oak Brook, Illinois, where he agreed to work with Marko Nikolic and Simeunovic to obtain EIDL loans fraudulently. Marko Nikolic and ALEKSIC prepared EIDL applications for businesses and shell entities, which applications ALEKSIC was aware contained materially false and fraudulent statements and representations.

For example, on or about June 16, 2020, with the assistance of Marko Nikolic, ALEKSIC caused an EIDL application for BIA Trucking, Inc., a business he incorporated in approximately July 2015, to be submitted to the SBA, in which he intentionally made a number of materially false and fraudulent statements. For example, in the application, ALEKSIC falsely and fraudulently overstated BIA

4

Trucking, Inc.'s number of employees (35), and inflated its gross revenues and costs of goods sold during the 12 months prior to January 31, 2020. ALEKSIC did so intending to increase the amount of funds that he would be approved to receive from the SBA. ALEKSIC also falsely represented in the EIDL application that he was a U.S. citizen, believing it would be more likely to be approved by the SBA than if he truthfully identified himself as a non-U.S. citizen. ALEKSIC falsely certified that the information he provided in the EIDL application was true and correct. ALEKSIC knew at the time that BIA Trucking, Inc. did not employ the number of employees represented in the applications, that it had not earned or incurred the amounts of revenue or costs of goods stated in the applications, and that he was not a U.S. citizen.

In the BIA Trucking, Inc. EIDL application, ALEKSIC requested that he be considered for an EIDL advance, which he knew could be $10,000 based upon his false statement that BIA Trucking, Inc. employed more than 10 individuals. ALEKSIC's request for an EIDL advance and EIDL was approved by the SBA. On or about June 19, 2020, as a result of the false and fraudulent representations that he made in the BIA Trucking, Inc. EIDL application, $159,900 was transmitted in interstate commerce by the SBA to Chase Bank account x7067, a bank account controlled by ALEKSIC which he had identified in the application as the account where EIDL funds could be deposited.

In addition to obtaining EIDL funds fraudulently for BIA Trucking, ALEKSIC also caused to be submitted to the SBA EIDL applications for shell entities he did not

own and which were not in operation. For example, on or about June 17, 2020, ALEKSIC caused Flowering Consulting LLC, a previously dissolved, limited liability corporation in Florida, to be reinstated and identified himself as the registered agent of the shell entity in order to submit a fraudulent EIDL application in the name of this shell entity.

Prior to causing the EIDL application to be submitted, ALEKSIC had opened an account at Chase Bank (account x4112) in the name of BRANKO ALEKSIC dba Flowering Consulting solely for the purpose of receiving any fraudulently obtained EIDL proceeds. On or about the same date, ALEKSIC caused an EIDL application for Flowering Consulting to be submitted to the SBA, which ALEKSIC knew included a number of materially false and fraudulent statements. For example, in the application, ALEKSIC falsely stated that Flowering Consulting employed 35 individuals, and submitted fictitious figures for its gross revenues and costs of goods sold during the 12 months prior to January 31, 2020. ALEKSIC also falsely represented in the EIDL application that he was a U.S. citizen, believing it would be more likely to be approved by the SBA than if he truthfully identified himself as a non-U.S. citizen. ALEKSIC falsely certified that the information he provided in the EIDL application was true and correct. ALEKSIC knew at the time he submitted the EIDL application that Flowering Consulting LLC was a shell entity that was not in operation, that it had no employees, and no revenue during the stated time period.

ALEKSIC also sought a $10,000 EIDL advance for Flowering Consulting in the EIDL application.

On or about June 17, 2020, ALEKSIC learned that the SBA intended to approve a $150,000 EIDL for Flowering Consulting LLC. On or about that same date, ALEKSIC electronically signed an SBA Loan Authorization and Agreement on behalf of Flowering Consulting in which he falsely and fraudulently represented to the SBA that all of the representations in his application were true, correct, and complete. ALEKSIC also falsely and fraudulently represented in the agreement that he would use the proceeds of the loan solely as working capital to alleviate the economic injury caused by the pandemic. ALEKSIC knew each of these representations was false at the time he submitted the agreement to the SBA.

As a result of this application and his execution of the agreement, on or about June 19, 2020, ALEKSIC caused the SBA to disburse approximately $149,900 in EIDL proceeds for Flowering Consulting LLC, by means of interstate wire communication, into Chase Bank account x4112. ALEKSIC knew at the time that neither he nor Flowering Consulting LLC was entitled to the EIDL funds and acknowledges that the false information that he provided about the business's expenses and employees was material to the SBA's approval and funding of this EIDL loan. The SBA also approved a $10,0000 EIDL advance for Flowering Consulting and disbursed those funds to Chase Bank account x4112 on or about June 30, 2020.

On or about the dates indicated below, ALEKSIC also caused EIDL applications to be submitted to the SBA for at least four additional entities which he knew included substantially identical false and fraudulent representations about the EIDL applicant and his immigration status to the SBA:

| Entity name | Application date | EIDL sought | Funds obtained |
|---|---|---|---|
| AB Freight LLC | 06/18/2020 | $ 160,000 | $ 10,000 |
| Gratz Logistics LLC | 06/23/2020 | $ 150,000 | $ 150,000 |
| Bianmarc LLC | 07/02/2020 | $ 150,000 | $ 0 |
| Pool B Clean LLC | 07/13/2020 | $ 150,000 | $ 0 |

In addition, on behalf of Simeunovic and Nikolic, ALEKSIC recruited other client-applicants seeking assistance obtaining EIDLs fraudulently from the SBA, including Individual A and Individual B. ALEKSIC did so in exchange for a share of the EIDL proceeds received by Nikolic and Simeunovic from the client-applicants. ALEKSIC was paid $47,500 on two occasions, on or about June 25, 2020, and June 26, 2020, by wire transfer from a SIM Express account for referring client-applicants to Simeunovic and Nikolic. ALEKSIC understood that the $95,000 he received was from fraudulently-obtained EIDL funds.

Through his participation in the scheme, ALEKSIC intended to cause a loss of approximately $930,000 when he sought to obtain approximately $930,000 in EIDL proceeds to which he and his co-schemers were not entitled, and received EIDL loan proceeds totaling approximately $575,000, which consisted of $480,000 received from

the SBA, and $95,000 transferred to him from a SIM Express for referring client-applicants to Simuenovic and Marko Nikolic.

      b.     With respect to Count 21 of the indictment:

On or about June 29, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, ALEKSIC knowingly conducted and attempted to conduct a financial transaction, namely, the deposit of approximately $50,000 from a Gratz Logistics bank account ending in 1441 maintained at Chase Bank into a Chase account ending in 7067, in or affecting interstate commerce, which financial transaction involved the proceeds of a specified unlawful activity, namely, wire fraud, knowing that the transaction was designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of the specified unlawful activity, and that while conducting such financial transaction, knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

Specifically, ALEKSIC conducted financial transactions involving fraud proceeds of the above-described scheme that he knew were designed to conceal and disguise the nature, location, source, and ownership of the fraud proceeds. For example, on or about June 23, 2020, ALEKSIC opened a Chase bank account ending in 1441, for the shell entity Gratz Logistics LLC. ALEKSIC opened Chase account x1441 for the purpose of receiving proceeds of the fraud scheme. On June 29, 2020,

the SBA transmitted the proceeds of an EIDL in the amount of $149,900 into the Gratz Logistics LLC account. During the next several days, ALEKSIC withdrew nearly all the fraudulently obtained EIDL proceeds from Chase account x1441 through several large, round-dollar cash withdrawals, and transfers to bank accounts unassociated with Gratz Logistics LLC. For example, on or about the same day that the EIDL proceeds were transmitted by the SBA to Chase account x1441, ALEKSIC transferred $50,000 to Chase account x7067, maintained in the name of BIA Trucking Incorporated. ALEKSIC transmitted and transferred the fraud proceeds in this manner because he wanted to hide his ownership and his control of the proceeds, as well as the nature, location, and source of the proceeds, from law enforcement and the SBA.

### Maximum Statutory Penalties

7.     Defendant understands that the charges to which he is pleading guilty carry the following statutory penalties:

a.     Count 4 carries a maximum sentence of 20 years' imprisonment. Count 4 also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that with respect to Count 4, the judge also may impose a term of supervised release of not more than three years.

b.     Count 21 carries a maximum sentence of 20 years' imprisonment. Count 21 also carries a maximum fine of $500,000, or twice the value of the funds

10

involved in the transportation, transmission, or transfer, whichever is greater. Defendant further understands that with respect to Count 21, the judge also may impose a term of supervised release of not more than three years.

c. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court. The Court also may order restitution to any persons as agreed by the parties.

d. Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on each count to which he has pled guilty, in addition to any other penalty or restitution imposed.

e. Therefore, under the counts to which defendant is pleading guilty, the total maximum sentence is 40 years' imprisonment. In addition, defendant is subject to a total maximum fine of $750,000, or twice the gross gain or gross loss resulting from the wire fraud offense of conviction and twice the value of the funds involved in the money laundering offense of conviction, whichever is greater, a period of supervised release, and special assessments totaling $200, in addition to any restitution ordered by the Court.

## Sentencing Guidelines Calculations

8. Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and

11

circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2021 Guidelines Manual.

b. **Offense Level Calculations.**

*Count 4 (wire fraud)*

i. The base offense level for Count 4 is 7, pursuant to Guideline § 2B1.1(a)(1).

ii.    The offense level is increased by 14 levels pursuant to Guideline § 2B1.1(b)(1)(H) because the amount of loss for which defendant is accountable is approximately $1,025,000, which is more than $550,000 but not more than $1,500,000.

iii.    The offense level is increased by 2 levels pursuant to Guideline § 2B1.1(b)(10)(C) because the offense involved sophisticated means and defendant intentionally engaged in and caused the conduct constituting sophisticated means.

iv.    The offense level for Count 4 is therefore 23.

*Count 21 (domestic concealment money laundering)*

v.    Pursuant to Guideline § 2S1.1(a)(1), the base offense level for Count 21 is the offense level for the underlying offense from which the laundered funds were derived, namely, the offense of conviction under Count 4, because (a) the defendant committed the underlying offense; and (b) the offense level for the underlying offense can be determined. The base offense level for Count 21 is therefore 23.

vi.    The offense level is increased by 2 levels pursuant to Guideline § 2S1.1(b)(2)(B) because the defendant was convicted under 18 U.S.C. § 1956.

vii.    The offense level for Count 21 is therefore 25.

*Grouping*

viii.     Pursuant to Guideline § 3D1.2(c) and 2S1.1, cmt. n. 6, Count 4 and Count 21 are grouped together into a single group because Count 4 embodies conduct that is treated as a specific offense characteristic in the guideline applicable to Count 21. Pursuant to Guideline 3D1.3(a), the offense level for the Group is the highest offense level of the counts in the group, which is level 25.

ix.     Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

x.     In accord with Guideline § 3E1.1(b), defendant has timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

c.      **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero and defendant's criminal history category is I.

d.      **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 22 which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 41 to 51 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

e.      Defendant and his attorneys and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall

not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     Each party is free to recommend whatever sentence it deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does not accept the sentencing recommendation of the parties, defendant will have no right to withdraw his guilty plea.

13.     Regarding restitution, defendant acknowledges that he caused a loss to the government of at least $575,000, and that, pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant, together with any jointly liable

co-defendants, to make full restitution in an amount to be determined by the Court at sentencing, which amount shall reflect credit for any funds repaid prior to sentencing.

14. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect his ability to pay restitution.

15. Defendant agrees to pay the special assessment of $200 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

## Forfeiture

17. Defendant understands that by pleading guilty, he will subject to forfeiture to the United States all right, title, and interest that he has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of his violations of Title 18, United States Code, Section 1343; and any property involved in transactions in violation of Title 18, United States Code, Section 1956

18. Defendant acknowledges that on or about January 5, 2021, administrative forfeiture proceedings were commenced against certain property identified in Customs and Border Protection case number 2021390100094901 relating to property seized by Immigration and Customs Enforcement from defendant on October 24, 2020, at O'Hare International Airport. Defendant also acknowledges that this property represented proceeds of the fraud scheme.

19. By signing this plea agreement, defendant acknowledges that he had notice of the administrative forfeiture proceeding, relinquishes any right, title, and interest he may have had in this property, withdraws any previously filed claims, and understands that an administrative decree of forfeiture has been entered, or will be entered, thereby extinguishing any claim he may have had in the seized property.

20. Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment.

21. Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel. Defendant further agrees not to challenge or seek review of the civil or administrative forfeiture

of any property identified in this agreement subject to forfeiture, and will not assist any third party with regard to such challenge or review.

22.    After sentence has been imposed on the counts to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining count of the superseding indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23.    This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 20 CR 750-5.

24.    This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

### Waiver of Rights

25.    Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a.   **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i.   The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.   If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.   If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the superseding indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv.   If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering

each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v.    At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi.    At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii.    At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b.    **Appellate rights**. Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial, and may only appeal the validity of this plea of guilty and the sentence imposed. Defendant understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

26.     Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

### Presentence Investigation Report/Post-Sentence Supervision

27.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing, including the nature and extent of defendant's cooperation.

28.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001, or as a contempt of the Court.

29.     For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

## Other Terms

30.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31.     Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including one or more offenses to which defendant is pleading guilty. Indeed, because defendant is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8,

United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that no one, including his attorneys or the Court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his guilty plea may entail, even if the consequence is his automatic removal from the United States.

## Conclusion

32.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on

the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.     Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35.     Defendant and his attorneys acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36.     Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorneys. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _July 6, 2023_

MICHELLE PETERSEN  Digitally signed by MICHELLE PETERSEN
Date: 2023.04.24 22:20:35 -05'00'
_____
MICHELLE PETERSEN on behalf of
MORRIS PASQUAL
Acting United States Attorney

_____
BRIAN HAYES
MALGORZATA T. KOZAKA
Assistant U.S. Attorneys

_____
BRANKO ALEKSIC
Defendant

_____
SAMI AZHARI
SERGEI KUCHINSKI
Attorneys for Defendant

25