**FILED**

**OCT 02 2023**

**JUDGE NANCY L. MALDONADO**
**U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>v.<br><br>MILICA SUMAKOVIC,<br>Defendant. | )<br>)<br>) Case No. 20-CR-750-6<br>)<br>) Judge ~~Ronald A. Guzman~~ Nancy L. Maldonado<br>)<br>)<br>) |

## PLEA DECLARATION

The Defendant, MILICA SUMAKOVIC, after consultation with her attorney, RICHARD M. BEUKE, acknowledges and states the following:

1. The superseding indictment in this case charges Milica Sumakovic with wire fraud, in violation of Title 18, United States Code, Section 1343 (Count 5), domestic concealment money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) (Count 22), and international concealment of money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i) (Count 31).

2. Ms. Sumakovic has read the charges against her contained in the superseding indictment, and those charges have been fully explained to her by her attorney.

3. Ms. Sumakovic fully understands the nature and elements of the crimes with which she has been charged.

### Charges to which Defendant is Pleading Guilty

4. By this Plea Declaration, Ms. Sumakovic agrees to enter a voluntary plea of guilty to the following counts of the superseding indictment: Count 5, which charges her with wire fraud, in violation of Title 18, United States Code, Section 1343, and Count 31, which charges her with

international concealment of money laundering, in violation of Title 18, United States Code, Section 1956(a)(2)(B)(i).

## Factual Basis

5. Ms. Sumakovic will plead guilty because she is in fact guilty of the charges contained in Counts 5 and 31 of the superseding indictment. In pleading guilty, she admits the following facts, that those facts establish her guilt beyond a reasonable doubt, and that those facts constitute relevant conduct pursuant to Guideline § 1B1.3:

   a. <u>With respect to Count 5 of the superseding indictment</u>:

   On March 27, 2020, the United States Congress passed an economic stimulus bill named the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"). Among other provisions, the CARES Act expanded the Small Business Administration's ("SBA") Economic Injury Disaster Loan ("EIDL") Program, which was intended to act as a source of economic relief to small business that were suffering economic hardship because of the COVID-19 pandemic. The EIDL program provided loan assistance (including advances of up to $10,000) for businesses with 500 or fewer employees and other eligible entities that met certain specified criteria.

   To gain access to funds through the EIDL Program, small businesses applied online through the SBA, which required applicants to submit truthful information about the small business, its owner, and its condition prior to the COVID-19 pandemic, including the number of employees as of January 31, 2020, its gross revenue and cost of goods sold for the 12-month period before January 31, 2020, the type of business, and the date the current owner took ownership of the business. Applicants who were approved for EIDL loans were required to use that money to pay for working capital and other normal operating expenses. Information about the business's

expenses and employees, and how the EIDL funds would be used was material to the SBA's approval, terms, and funding of EIDL loans.

In late March, 2020, Ms. Nikolic was recruited by her then-boyfriend and current co-defendant Marko Nikolic to participate in a scheme to defraud the EIDL Program. As part of the scheme, its members of the scheme submitted applications to the SBA for loans and advances under the EIDL Program on behalf of businesses purportedly owned by the members of the scheme, and in some cases, their "clients." The applications contained materially false information about, *inter alia*, the applicants' citizenship status, the number of employees working at the businesses, revenue and expense figures, and the type of business conducted by the companies. Some members of the scheme paid for the reincorporation of previously dissolved companies ("shell companies"), identified themselves and others as officers and agents of those companies, and submitted EIDL applications in which they falsely represented that they assumed ownership and operation of those companies more than one year before the dates on which they paid to reincorporate the companies. The shell companies were not in operation at the time the EIDL applications were submitted, the defendants did not own or have any relationship to the shell companies prior to the date they paid to reincorporate them, the former owners of the shell companies had not authorized them to reincorporate or assume responsibility for those companies, and the applicants did not qualify for any of the loan proceeds that they sought on behalf of the shell companies.

Ms. Sumakovic learned of the scheme in late March 2020, when Mr. Nikolic prepared and submitted EIDL applications for two businesses he owned and operated – namely, I-Truck Logistics and BG Cargo. Ms. Sumakovic learned that both applications included false information

3

relating to the businesses, their number of employees, gross revenues for the 12-month period preceding January 31, 2020, the costs of goods sold for that same 12-month period, and Mr. Nikolic's citizenship status.

MMM Solution, Inc.

On March 30, 2020, while at the home she shared with Mr. Nikolic in LaGrange, Illinois, Mr. Nikolic instructed Ms. Sumakovic to submit an EIDL application for MMM Solution, Inc. ("MMM"), a legitimate business she incorporated in October 2017. In that application, Mr. Nikolic instructed her to make multiple false statements; specifically, she exaggerated the number of employees working at MMM, inflated its revenues and cost of goods sold during the 12 months prior to January 31, 2020, and claimed she was a U.S. Citizen. Mr. Nikolic instructed her to falsify the application in an attempt to increase the amount of money that would be approved by the SBA and with the understanding that it was more likely that the SBA would approve the application if she was a U.S. Citizen. Mr. Nikolic instructed her to request that she be considered for an EIDL advance – a request that was approved on April 15, 2020, and resulted in a $10,000 transfer from the SBA to Ms. Sumakovic's Chase Bank account ending in 5368.

On May 10, 2020, at Mr. Nikolic's direction, Ms. Sumakovic electronically signed an SBA Loan Authorization and Agreement on behalf of MMM in which she fraudulently certified that all of the representations in her application were true, correct, and complete and that she would use the proceeds of the loan solely as working capital to alleviate the economic injury caused by the pandemic. Two days later, on May 12, 2020, the SBA disbursed approximately $149,900 in EIDL proceeds for MMM into the Chase Bank account ending in 5368. Ms. Sumakovic knew at the time that neither she nor MMM was entitled to the EIDL funds and acknowledges that the information

4

that she provided about MMM's expenses and employees was material to the SBA's approval and funding of this EIDL loan.

CS Freight, LLC

At the behest of Mr. Nikolic, Ms. Sumakovic submitted EIDL applications to the SBA for two additional entities in which she made substantially identical misrepresentations about the business and her immigration status. Specifically, on May 5, 2020, she submitted an application on behalf of a company she owned, CS Freight, LLC ("CS Freight"). On June 23, 2020, the SBA disbursed approximately $149,900 in EIDL proceeds for CS Freight into a Fifth Third Bank account ending in 5239, in addition to a $10,000 EIDL advance for CS Freight. Ms. Sumakovic knew at the time that neither she nor CS Freight was entitled to the EIDL funds and acknowledges that the information that she provided about the business's expenses and employees was material to the SBA's approval and funding of this EIDL loan.

Trucker Island, Inc.

On October 8, 2020, Ms. Sumakovic submitted a third fraudulent EIDL application to the SBA. This application, on behalf of Trucker Island, Inc., sought a $75,000 loan. Prior to submitting this EIDL application, Ms. Sumakovic opened an account at BMO Harris Bank in the name of Trucker Island, Inc. solely for the purpose of receiving the EIDL funds and to register herself as the agent for that company in Illinois. The EIDL application for Trucker Island, Inc. was not approved by the SBA and no funds were ever transferred.

Separate from the three applications that Ms. Sumakovic submitted, she learned that co-defendants Mr. Nikolic, Maja Nikolic, and Nebojsa Simeunovic prepared and submitted fraudulent EIDL applications on behalf of third-party "clients" in exchange for a cut of the EIDL proceeds.

5

She learned that, as part of their scheme, Mr. Nikolic, Ms. Nikolic, and Ms. Simeunovic created shell companies for the purpose of applying for fraudulent EIDL loans by reincorporating dissolved businesses, registering them in the names of their "clients," and opening bank accounts for those shell companies for the purpose of receiving the fraudulently obtained EIDL loans and advances. She learned that, in order to complete and submit the fraudulent applications on behalf of their "clients," Mr. Nikolic, Ms. Nikolic, and Mr. Simeunovic met with the applicants, gathered their personal information, tracked the status of the fraudulent applications, and communicated with the applicants when additional information was needed and when EIDLs were approved.

Mr. Nikolic's directed Ms. Sumakovic to assist him in preparing fraudulent EIDL applications for several of his "client's" applications. For example, she created e-mail accounts and passwords to assist Mr. Nikolic with the purchase, reinstatement, and registration of the dissolved companies. She knew that Mr. Nikolic used those e-mail accounts when preparing and submitting fraudulent EIDL applications for "clients." In this manner, Ms. Sumakovic assisted Mr. Nikolic in preparing and submitting approximately 17 additional fraudulent applications seeking EIDLs in amounts totaling approximately $2,550,000.

b.  <u>With respect to Count 31 of the superseding indictment</u>:

On July 2, 2020, in the Northern District of Illinois, Eastern Division, and elsewhere, Ms. Sumakovic knowingly transmitted and transferred, and attempted to knowingly transmit and transfer, a monetary instrument and funds from a place in the United States to and through a place outside the United States. Specifically, she wire-transferred $235,000 from her Citibank account ending in 5078 in the United States to a financial account at Raiffeisen Banka A.D. in Serbia, using the proceeds of the wire fraud charged in Count 5.

In order to retain the money she and others received from the EIDL fraud scheme described above, at the direction of Marko Nikolic, Ms. Sumakovic repeatedly conducted financial transactions with fraud proceeds that she knew were designed to conceal and disguise the nature, location, source, and ownership of the fraud proceeds.

As part of the fraud scheme, on June 25, 2020, she opened an account ending in 5078 in her own name at Citibank that was principally used for EIDL proceeds fraudulently obtained from the SBA through the scheme. The opening deposit into that Citibank account was a Chase cashier's check from Mr. Nikolic payable to Ms. Sumakovic in the amount of $250,000. She knew that these funds were derived from the fraud scheme at the time she deposited them. On July 2, 2020, she deposited a cashier's check issued by Fifth Third Bank payable to herself in the amount of $147,247.89 into Citibank account 5078. She knew that check was funded by proceeds derived from the fraudulent EIDL application she submitted to the SBA for the shell company CS Freight.

As part of the fraud scheme, on July 2, 2020, for the benefit of a third party, Ms. Sumakovic wire-transferred approximately $235,000 of these proceeds from Citibank account 5078 to an account ending in 0207 at Raiffeisen Banka A.D. in Serbia. Ms. Sumaokovic knew the international wire transfer was funded almost entirely by funds obtained from the EIDL fraud scheme. She transferred the funds out of the United States because she wanted to hide the proceeds, the nature, the location, and the source of the funds from law enforcement.

As part of the fraud scheme, similarly, on July 27, 2020, at the direction of Mr. Nikolic, Ms. Sumakovic transferred $350,000 from a Citibank account ending in 0043, which Mr. Nikolic maintained in his own name, into Citibank account 5078. Ms. Sumakovic knew that those funds were derived from the fraud scheme. Then, on July 31, 2020, at the direction of Mr. Nikolic, she withdrew $300,000 of those

funds in the form of two $150,000 official bank checks and deposited them into two Chase Bank accounts maintained by Mr. Nikolic, one for I-Truck Logistics (account ending in 7122) and one for BG Cargo (account ending in 8530). On that same day, for the benefit of a third party, Ms. Sumakovic wire-transferred an additional $195,000 from Citibank account 5078 to an account ending in 0207 at Raiffeisen Banka A.D. in Serbia. She transferred the funds out of the United States because she wanted to hide the proceeds, the nature, the location, and the source of the funds from law enforcement.

### Maximum Statutory Penalties

6. Ms. Sumakovic understands that the charges to which she is pleading guilty carry the following statutory penalties:

   a. Count 5 carries a maximum sentence of 20 years' imprisonment and a maximum fine of $250,000, or twice the gross gain or gross loss resulting from the offense, whichever is greater. Additionally, the Court may impose a term of supervised release of up to three years.

   b. Count 31 carries a maximum sentence of 20 years' imprisonment and a maximum fine of $500,000, or twice the value of the funds involved in the transportation, transmission, or transfer, whichever is greater. Additionally, the Court may impose a term of supervised release up to three years.

   c. The Court must also order restitution to the victims of the offense in an amount determined by the Court and may order restitution to any other persons as agreed by the parties.

d. Pursuant to Title 18, United States Code, Section 3013, Ms. Sumakovic will be assessed $100 on each count to which she is pleading guilty, in addition to any other penalty or restitution imposed by the Court.

e. Therefore, under the counts to which Ms. Sumakovic is pleading guilty, the total maximum sentence is 40 years' imprisonment and a total maximum fine of $750,000, or twice the gross gain or gross loss resulting from the wire fraud offense of conviction and twice the value of the funds involved in the money laundering offense of conviction, whichever is greater. Additionally, the Court may impose a period of supervised release of up to six years, special assessments totaling $200, and any restitution ordered by the Court.

### Acknowledgment of Waiver of Rights

7. Ms. Sumakovic understands that by pleading guilty she surrenders certain rights, including the following:

  a. **Trial rights**.

   i. Ms. Sumakovic has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

   ii. The trial could be either a jury trial or a trial by the Judge sitting without a jury. However, in order that the trial be conducted by the Judge sitting without a jury, Ms. Sumakovic, the Government, and the Judge all must agree that the trial be conducted by the Judge without a jury.

   iii. If the trial is a jury trial, the jury would be composed of twelve citizens from the District, selected at random. Ms. Sumakovic and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual

bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

   iv. If the trial is a jury trial, the jury would be instructed that Ms. Sumakovic is presumed innocent, that the Government has the burden of proving her guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

   v. If the trial is held by the Judge without a jury, the Judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the Judge was persuaded that the Government had established Ms. Sumakovic's guilt beyond a reasonable doubt.

   vi. At a trial, whether by a jury or the Judge, the Government would be required to present its witnesses and other evidence against Ms. Sumakovic. Ms. Sumakovic would be able to confront those Government witnesses and her attorney would be able to cross-examine them.

   vii. At a trial, Ms. Sumakovic could present witnesses and other evidence on her own behalf. If the witnesses for Ms. Sumakovic would not appear voluntarily, she could require their attendance through the subpoena power of the Court. Ms. Sumakovic would not be required to present any evidence.

10

        viii.      At a trial, Ms. Sumakovic would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If she desired to do so, she could testify on her own behalf.

        b.      **Appellate rights.** Ms. Sumakovic further understands she is waiving all appellate issues that might have been available if she had exercised her right to trial and may only appeal the validity of this plea of guilty and the sentence imposed. She understands that any appeal must be filed within 14 calendar days of the entry of the judgment of conviction.

    8.    Ms. Sumakovic understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Her attorneys have explained those rights to her, and the consequences of her waiver of those rights.

    9.    Ms. Sumakovic recognizes that pleading guilty may have consequences with respect to her immigration status if she is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including one or more offenses to which she is pleading guilty. Indeed, because Ms. Sumakovic is pleading guilty to an offense that is an "aggravated felony" as that term is defined in Title 8, United States Code, Section 1101(a)(43), removal is presumptively mandatory. Removal and other immigration consequences are the subject of a separate proceeding, however, and Ms. Sumakovic understands that no one, including her attorney or the Court, can predict to a certainty the effect of her conviction on her immigration status. Ms. Sumakovic nevertheless affirms that she wants to plead guilty regardless of any immigration consequences that her guilty plea may entail, even if the consequence is her automatic removal from the United States.

### Presentence Investigation Report/Post-Sentence Supervision

11

10. Ms. Sumakovic understands that the United States Attorney's Office will fully apprise the Court and the Probation Office of the nature, scope, and extent of her conduct regarding the charges against her, and related matters, including matters in aggravation and mitigation relevant to the issue of sentencing, including the nature and extent of her cooperation and acceptance of responsibility. Ms. Sumakovic further understands that she will be able to present evidence in mitigation at the time of sentencing.

11. Ms. Sumakovic understands that at the time of sentencing, the Government and Ms. Sumakovic will be free to make their respective recommendations to the Court.

12. Should this Court refuse to accept Ms. Sumakovic's plea of guilty, this Plea Declaration shall become null and void and he will not be bound hereto. It is the defense's position that, should the Court reject her plea, Ms. Sumakovic withdraws er plea of guilty pursuant to Rule 11 of the Federal Rules of Criminal Procedure. Additionally, pursuant to Rule 11(f) and Federal Rule of Evidence 410, this Plea Declaration and the ensuing court proceedings are inadmissible in later court proceedings.

13. Ms. Sumakovic agrees that this Plea Declaration, if accepted, shall be filed and become part of the record of her case.

14. Ms. Sumakovic and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, to induce her to plead guilty. Ms. Sumakovic further acknowledges that she has read this Plea Declaration and carefully reviewed each provision with her attorney.

Signed this 28 day of September, 2023

*M. Sumakovic*
MILICA SUMAKOVIC

Defendant

*[signature]*

RICHARD M. BEUKE
Attorney for the Defendant