UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff | ) | |
| vs. | ) | Case No. 1:20-CR-00750 |
| | ) | |
| BRANKO ALEKSIC, | ) | Judge Maldonado |
| | ) | |
| Defendant. | ) | |

**DEFENDANT BRANKO ALEKSIC'S**
**POSITION REGARDING SENTENCING**

Defendant, Branko Aleksic ("Mr. Aleksic"), by and through his undersigned counsel submits the following Response to PSR and Position Regarding Sentencing:

**I.      PROCEDURAL BACKGROUND**

On July 6, 2023, Mr. Aleksic promptly pled guilty to Counts Four and Twenty-One of the Superseding Indictment, pursuant to a written plea agreement. That timely plea came after Mr. Aleksic immediately admitted his wrongdoing when confronted by agents from Customs and Border Protection ("CBP") in October of 2020. *See* PSR, at p. 7, paragraphs 23-24. Count Four charged him with Wire Fraud in violation of 18 U.S.C. § 1343. Count Twenty-One charged him with Laundering of Monetary Instruments in violation of 18 U.S.C. § 1956(a)(1)(B)(i).

As iterated in the Plea Agreement, and agreed to by the parties, the PSR applied the 2021 Guidelines and determined the Total Offense Level to be 22, and Mr. Aleksic's Criminal History category to be I – resulting in a suggested Guidelines range of 41 to 51 months. That Total Offense Level includes a 2-level enhancement pursuant to §2S1.1(b)(2)(B) since Mr. Aleksic was convicted under 18 U.S.C. § 1956. The Total Offense Level also includes a 2-level decrease

for acceptance of responsibility under §3E1.1(a) and an additional 1-level decrease under §3E1.1(b).

## II. PERSONAL BACKGROUND

Mr. Aleksic is a 34-year-old man, originally from Croatia, who emigrated to the United States in 2015 to seek a better life in America. He was born in Dubrovnik, Croatia to Milorad and Radojka Aleksic (nee: Kilibarda) and has one sibling. Mr. Aleksic was raised in a stable home by both parents and enjoyed a peaceful childhood of which he has many positive memories. This is a remarkable understatement considering the turmoil surrounding his family's life during his first few years of life.

In 1991, Mr. Aleksic and his parents were forced out of their home in Dubrovnik during the civil war that erupted in Croatia. Prior to their departure, a bomb detonated near their home causing his mother permanent hearing loss and chronic headaches. Despite the inescapably traumatic nature of these events, as Mr. Aleksic notes, his parents remained "mentally strong and positive," which impacted him immensely and directly contributed to the many positive childhood memories he experienced thereafter. After leaving Croatia, his family settled in Tivat, Montenegro, and eventually relocated to the capital city, Podgorica in 2001.

As a child Mr. Aleksic was active and showed promising skills as a tennis player at an early age. He was one of the top tennis players in Montenegro until about the age of 16. Although he was skilled at and very much enjoyed playing tennis, his commitment to tennis began to adversely impact his performance in school. Since education was a priority, Mr. Aleksic left organized tennis to return his focus to his studies.

His refocus upon his education paid off. After graduating high school, Mr. Aleksic earned a bachelor degree in International Relations and Diplomacy in 2011 from the University of

Donja Gorica (U.D.G.) in Podgorica, Montenegro. He continued his studies at U.D.G., earning several masters level diplomas—a masters degree program in Business Psychology and Management, a diploma in Humanistic Studies, and a "Foreign Policy and Diplomacy Specialist" diploma. Mr. Aleksic was also active outside the classroom. As an undergraduate student, he joined a nongovernmental organization, on track to eventually participate in NATO. He also volunteered for various student rights campaigns as an acting student representative at U.D.G.

Additionally, he earned a plethora of certifications, including a diploma for successful completion of the seminar "Serbia and NATO" in 2010, a diploma for successful completion of the "Human Rights School" in 2011, a certificate for passing the Civil Service Exam in 2014, and many others. *See Exhibits attached hereto.*

After receiving a recommendation and support from the Dean of Humanistic Studies at U.D.G., Mr. Aleksic applied for a Visa and came to the United States. Mr. Aleksic first settled in Seattle, Washington to obtain his commercial driver's license, after which he moved to San Bernadino, California, where he lived for five years. In 2020, he relocated to Chicago, where he resided until his arrest.

In 2015, Mr. Aleksic married Elissa Avalos in California. They do not have any children together. Mr. Aleksic filed for divorce in 2019, prior to his relocation to Chicago. In Chicago, Mr. Aleksic reconnected with a long-time friend from college, Maja Djuretic. After reconnecting, she relocated to the United States to be with Mr. Aleksic. They are now engaged and have a 1-year-old daughter together. In April 2023, Ms. Djuretic and their daughter moved back to Montenegro to have the support of both her, and Mr. Aleksic's parents. Upon release from custody, Mr. Aleksic and Ms. Djuretic plan to reunite in Montenegro and marry and continue to build their family.

### III. DEFENDANT'S POSITION REGARDING SENTENCING

This Court exercises broad discretion to determine a just and equitable sentence that punishes the particular offender, as opposed to just the crime. *See*, *e.g.*, *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011); *United States v. Ramirez-Mendoza*, 683 F.3d 771, 777 (7th Cir. 2012). After first calculating the applicable suggested Guidelines range, district courts are then tasked with imposing a sentence that is reasonable under 18 U.S.C. § 3553(a). However, because the suggested Guidelines ranges are not presumed to be reasonable, this Court must consider whether they actually conform to the particular circumstances of the case. *See*, *e.g.*, *Nelson v. United States*, 555 U.S. 350 (2009) (per curiam); *United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005). So long as the selected sentence is "rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency[,]" a below guidelines sentence is appropriate. *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

As set forth below, Mr. Aleksic respectfully asks this Court to use its discretion, in accordance with the § 3553(a) factors and *Gall*, to impose a sentence below the advisory Guidelines range.

### IV. APPLICATION OF 18 U.S.C. §3553(A) FACTORS

As indicated in the Plea Agreement, and detailed in the PSR, the parties agreed to the applicable Guidelines, the offense level calculations, the criminal history category, and anticipated advisory sentencing guidelines range. As mentioned above, including all applicable enhancements and a decrease for acceptance pf responsibility, the resulting Total Offense Level is calculated to be 22. Given Mr. Aleksic's Criminal History Category I, the resulting suggested Guidelines range is 41 to 51 months.

### A. 3553(a)(1): THE NATURE AND CIRCUMSTANCES OF THE OFFENSE AND THE HISTORY AND CHARACTERISTICS OF THE DEFENDANT

The nature and circumstances of the offense provide strong mitigation. As set forth above, Mr. Aleksic is a young, hard-working, and family-focused individual who sought to make a better life for himself and his family in the United States and who, unfortunately, made a series of poor decisions. He has tremendous remorse for his misconduct, evidenced in part by his willingness to speak with authorities when apprehended. He fully appreciates the seriousness of his conduct, and fully accepts responsibility for his transgressions.

**Letters of Support**

Additional insight into Mr. Aleksic's character and, just as importantly, his capacity for rehabilitation, is evident upon review of his numerous letters of support (attached hereto). Despite his poor choices that bring him before this Court, Mr. Aleksic's caring nature and regard for those who depend upon him is clear. For example, in their letter, Mr. Aleksic's parents note that Mr. Aleksic always exhibited "great empathy" and was "always willing to put others' needs before his own." They do not excuse his poor choices, but emphasize that he is "much more and better than" the mistakes. Rather more important, his parents note that Ms. Djuretic and their new granddaughter live with them and eagerly await his return.

Ms. Djuretic's parents convey the same level of support for Mr. Aleksic and hopes for his future with their daughter and granddaughter. In their letter, they note that they had not only heard great things about Mr. Aleksic when he met their daughter in college, but "saw it for [them]selves." They describe his quick generosity toward those who had suffered bad weather in Montenegro. They also describe the importance of his relationship with Ms. Djuretic during his move to the United States. Her parents reflect "how happy they are" together and lament the

devastating impact of their current separation. Most importantly, in spite of their recognition of the seriousness of the charges against him, they remain supportive of Mr. Aleksic and anticipate his eventual return to Montenegro to rejoin his growing family.

Mr. Aleksic has also received support from those who interact with him in custody. Of particular value, the Staff at Jerome Combs Detention Center, with Crossroads Prison Ministries have submitted a letter attesting to Mr. Aleksic's character and positive qualities. In their letter, H. Rose notes that Mr. Aleksic, who has been involved with this program since December 2022, "works diligently and follows through on his commitments." He is also "a conscientious student and a joy to work with."

The great outpouring of support that Mr. Aleksic has received in the attached letters collectively confirms that Mr. Aleksic's true character cannot be narrowly defined by his involvement in the current offense. While neither he, nor any of his supports, diminish the seriousness of his conduct, they champion his eventual recovery from this incident and his return to his family and community.

### B. 3553(a)(2): THE NEED FOR THE SENTENCE IMPOSED TO REFLECT THE SERIOUSNESS OF THE OFFENSE, TO PROMOTE RESPECT OF THE LAW, TO PROVIDE JUST PUNISHMENT AND ADEQUATE DETERRENCE, AND TO PROVIDE THE DEFENDANT WITH NEEDED MEDICAL CARE

This Court is inherently tasked with an incredibly difficult decision as to what a just and equitable punishment is for any given defendant. While the Guidelines provide a suggested benchmark, they fail to account for the specific individual who committed the offense at issue. Although the parties have agreed to the calculated advisory guidelines range, it remains "greater" than necessary to achieve the legitimate aims of sentencing. Here, Mr. Aleksic is a 34-year-old, first time nonviolent offender. In addition, the instant offense did not involve the use of violence

or the possession of weapons. And while he makes no effort to minimize the seriousness of the offense and fully understands the need for retribution, an appropriate sentence in this case should vary from the merely advisory Guidelines.

A core finding of research involving the deterrent effect upon the criminal justice system reveals that deterrence is primarily a function of the *certainty* of punishment, not its *severity*.[1] Daniel Nagin, one of the foremost scholars of deterrence in the United States, found that "the effect of certainty rather than severity of punishment reflect[s] a response to the certainty of apprehension." It is the certainty of punishment, the likelihood of getting caught, prosecuted, and punished, that will deter the general public, not the severity of prison time. Mr. Aleksic's conduct in this case has already resulted in certain punishment, a federal felony conviction, which will affect him for the rest of his life.

Deterrence research also shows that longer terms of imprisonment yield diminishing returns for public safety as individuals "age out" of high-crime years.[2] As someone who has never been subjected to a term of imprisonment, any incarceration will undoubtedly have a severe impact on Mr. Aleksic, certainly more so than someone previously subjected to imprisonment. *See United States v. Baker*, 445 F.3d 987, 990-92 (7th Cir. 2006) (upholding downward variance based on the fact that "a prison term would mean more to [a defendant who has never been incarcerated before] than to a defendant who previously has been imprisoned."). In addition, as the Court is more aware of than most in society, a federal conviction is a life-long stigma that carries serious and severe consequences for not only Mr. Aleksic, but his family as

---

[1] *See* Daniel S. Nagin, *Deterrence in the Twenty-First Century: A Review of the Evidence*, 42 Crime and Just. 199, 207 (2013).
[2] Marc Mauer, *Long-Term Sentences: Time to Reconsider the Scale of Punishment*, 87:1 UMKC Law Review 113, 121 (2018).

well. Such punishment provides a permanent reminder of his wrongdoing, and, for Mr. Aleksic, carries a high degree of guilt and shame.

### C. 3553(a)(6): THE NEED TO AVOID UNWARRANTED SENTENCING DISPARITIES

Section 3553(a)(6) requires the Court to consider "*the need to avoid unwarranted sentencing disparities among defendants with similar records that have been found guilty of similar conduct.*" 18 U.S.C. 3553(a)(6).

Six other individuals were charged in cases related to Mr. Aleksic's. Marko Nicolic pled guilty and is scheduled for sentencing on November 15, 2023. Milica Sumakovic plead guilty and is awaiting sentencing. Maja Nikolic, Nebojsa Simeunovic, Mijajlo Stanisic, and Dorde Todorovic are all presently considered fugitives.

When comparing Mr. Aleksic to similarly situated defendants in the national arena, we turn to the United States Sentencing Commission, which reports that in fiscal year 2022, the average sentence for government benefits fraud offenders was 19 months. Among these offenders 45.1% of these offenders received a variance, with 96.2% receiving a downward variance, with an average sentence reduction of 59.7%. For money laundering offenders, 42.2% of these offenders received a variance, with 97.8% receiving a downward variance, with an average sentence reduction of 48.8%.

### D. THE KINDS OF SENTENCES AVAILABLE

Justice would not be served by incarcerating Mr. Aleksic for a lengthy period of time. Given his unwavering acceptance of responsibility and his continued desire to improve his life, this Court should consider an alternative to the recommendation and sentence Mr. Aleksic to a below guidelines sentence. Additionally, Mr. Aleksic presents an extremely low risk for

recidivism due to his low Criminal History Category. The lack of a risk for recidivism based on this factor is supported empirically in recidivist studies. In their recent report, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (September 2021), the United States Sentencing Commission (USSC) details the findings of ongoing research of the recidivism of federal offenders. The USSC data show that offenders with zero criminal history points had the lowest rearrest rates – slightly more than one-quarter (26.8%) of offenders with no criminal history points assigned were rearrested during the study period.[3] As indicated in the PSR, Mr. Aleksic has zero criminal history points, falling within the lowest criminal history category. See PSR, at ¶ 49.

**WHEREFORE**, Defendant, Branko Aleksic, by and through his undersigned counsel, respectfully requests that this Court impose the minimum possible sentence available to this Court to impose, and for such other and further relief as is appropriate under the circumstances.

                Respectfully submitted,

                /s/Sami Azhari
                Sami Azhari
                Attorney for Defendant

Sami Azhari
Azhari LLC
134 North LaSalle Street
Suite 444
Chicago, Illinois 60602
Phone: (312) 626-2871
Email: sazhari@azharillc.com
Attorney No: 6294661

Sergei Kuchinski
Kuchinski Law Group
211 W. Wacker Drive
Suite 300

---

[3] Ryan Cotter, et al., Recidivism of Federal Offenders Released in 2010, United States Sentencing Commission, September 2021 at 26.

Chicago, IL 60606
Phone: (312) 765-7365
Email: sergei@kuchinskilawgroup.com

## CERTIFICATE OF SERVICE

    I, Sami Azhari, do hereby certify that on the 23rd day of October 2023, I filed the foregoing Sentencing Memorandum using the CM/ECF system, which will send notification of such filing in compliance with LR 5.9 for the Northern District of Illinois.

                                        /s/Sami Azhari
                                        Sami Azhari