**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 1:20CR00750-2** |
| | ) | **Hon. Judge Nancy Maldonado** |
| | ) | |
| **MARKO NIKOLIC** | ) | |
| | ) | |

### DEFENDANT'S PRE-SENTENCE MEMORANDUM AND OBJECTIONS

Defendant Marko Nikolic, by and through his attorneys, Michael P. Gillespie and Michael Krejci, respectfully submits this Sentencing Memorandum in order to provide information to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory punishment as required by 18 U.S.C. §3553(a). Defendant states as follows:

**OVERVIEW OF SENTENCING REPORT**

Mr. Nikolic is charged in violation of 18 U.S.C. § 1343 (Wire Fraud) and 18 U.S.C. § 1956(a)(2)(B)(i) (Money Laundering).

On May 22nd, 2023, Mr. Nikolic appeared before the Honorable Judge Nancy Maldonado and entered a plea of guilty to Counts Eight and Thirty-Two of the superseding indictment.

**GUIDELINES**

Mr. Nikolic agrees with the calculated offense levels, special offense characteristics, and adjustments for acceptance of responsibility as provided in the Presentence Report ("PSR").

Mr. Nikolic additionally provides he is a zero-point offender is additionally eligible for a two-point reduction under §4C1.1 as he has no prior convictions and no criminal history points.

1

As noted by this Honorable Court as of November 1, 2023, the 2023 Sentencing Guidelines are in effect. As noted by the Court, the amendments include a new guideline under §4C1.1 that provides a decrease of two offense levels for "Zero-Point Offenders," that is, offenders with no criminal history, as long as certain requirements are met. As provided in the Court's docket entry, this Honorable Court expects Defendant's and the Government's forthcoming sentencing memoranda to opine on the impact of the amendments (including the amendment in §4C1.1 or any other potentially relevant amendments) on the guidelines calculations in the PSR, if any.

§4C1.1 defines "zero-point offenders" as those offenders with no criminal history points, including (1) offenders with no prior convictions; (2) offenders who have prior convictions that are not counted because those convictions were not within the time limits set forth in subsection (d) and (e) of §4A1.2 (Definitions and Instructions for Computing Criminal History); and (3) offenders who have prior convictions that are not used in computing the CHC for reasons other than their "staleness" (e.g., sentences resulting from foreign or tribal court convictions, minor misdemeanor convictions, or infractions). Offenders must meet the following criteria under §4C1.1:

1. the Defendant has not received any criminal history points;

2. the Defendant has not received an adjustment for terrorism (covered by § 3A1.4);

3. the Defendant did not use violence or credible threats of violence in connection with the offense;

4. the offense did not result in death or serious bodily injury;

5. the offense of conviction is not a sex offense;

6. the defendant did not personally cause substantial financial hardship (to be determined independently of the application of § 2B1.1(b)(c));

2

7. the Defendant did not possess, receive, purchase, transport, transfer, sell, or otherwise dispose of a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;

8. the offense of conviction is not an offense involving individual rights (covered by § 2H1.1);

9. the Defendant did not receive an adjustment under § 3A1.1 (hate crime motivation or vulnerable victim) or § 3A1.5 (serious human rights offense); and,

10. the Defendant did not receive an adjustment under § 3B1.1 (aggravating role) and was not engaged in a continuing criminal enterprise.

Mr. Nikolic has not received any criminal history points, has not received an adjustment for terrorism, did not use violence or threats of credible violence, the offense did not result in death or serious bodily injury, the instant matter is not a sex offense, Mr. Nikolic did not possess firearms in the commission of this offense, the instant offense is not one involving individual rights, Mr. Nikolic did not receive an adjustment under § 3A1.1 or § 3A1.5, and Mr. Nikolic did not receive an adjustment under § 3B1.1 and was not engaged in a criminal enterprise.

Mr. Nikolic does note that although the plea agreement applied a leadership enhancement regarding the wire fraud offense under § 3B1.1(b) because Mr. Nikolic was a manager and supervisor and the criminal activity involved 5 or more participants and was otherwise extensive. However as noted in the Presentence Investigation Report, pursuant §1B1.5(c) and §2S1.1, Application Note 2(C), because the money laundering offense level is determined by referencing another guideline, that is §2B1.1, the adjustments are determined in respect to the money laundering offense. Because Mr. Nikolic was not a leader in the money laundering offense, the adjustment for an aggravating role under §3B1.1 is not applied.

The remaining determination for this Honorable Court to determine if Mr. Nikolic is if the instant offense resulted in a substantial financial hardship, a determination that must be made independently from the application of § 2B1.1(b)(c). Courts have generally applied a subjective standard to the determination of whether a victim has suffered "substantial financial hardship."[1]

The Seventh Circuit has provided the most extensive discussion of the enhancement thus far.[2] In *United States v. Minhas*, the court held that the fact that the hardship must be "substantial" introduces a relativity requirement as "the same dollar harm to one victim may result in a substantial financial hardship, while for another it may be only a minor hiccup."[3]

As part of the plea agreement, the parties have agreed the loss amount in the instant matter is at least $17,700,000 but not more than $25,000,000.

Mr. Nikolic wholeheartedly accepts responsibility for this immense financial crime, and is profoundly remorseful for his role within it. Given the nature of the offense, the criminal act preyed upon a federal government aid package intending to provide emergency financial assistance to millions of Americans who were suffering from the economic effects of the COVID-19 pandemic. The scheme itself ran counter to the intention behind the aid, but ultimately impacted the United States Government, and as a result, the American taxpayer. While the amount of funds involved in the instant matter is unquestionably significant, there is not a substantial financial hardship to any particular victim given the size and scope of the federal government and the number of American taxpayers.

---

[1] See e.g., *United States v. Poulson*, 871 F.3d 261, 268 (3d Cir. 2017) ("We agree with the observation by our sister circuits that the determination of 'substantial financial hardship' is subject to the usual—and significant—degree of discretion afforded a district court during sentencing…[and] [t]hat discretion is crucial as §2B1.1's increased emphasis on individual harm means that 'substantial financial hardship' is measured on a sliding scale that is also fairly subjective.").
[2] See generally *United States v. Minhas*, 850 F.3d 873 (7th Cir. 2017).
[3] *Id*. at 877–78

Additionally, Mr. Nikolic respectfully asks this Honorable Court to note that Mr. Nikolic's co-defendant Branko Aleksic was granted this adjustment under §4C1.1 upon agreement of the parties on November 2nd, 2023.

Again, in no way does Mr. Nikolic attempt to downplay the immensity of this crime. Mr. Nikolic makes this point simply to support that this Honorable Court determine he is a Zero Point Offender under §4C1.1 given that he has zero criminal history points and no prior criminal convictions.

**THE DEFENDANT'S CRIMINAL HISTORY**

Mr. Nikolic agrees with his criminal history, criminal history computation and criminal history score as provided in the PSR.

**SENTENCING OPTIONS**

**<u>Custody</u>**

<u>Statutory Provisions:</u>

Mr. Nikolic agrees to the statutory provisions outlined in the PSR.

<u>Guideline Provisions:</u>

Mr. Nikolic provides that his total offense level should be 28 with a criminal history category of I due to the fact Mr. Nikolic is a zero-point offender is additionally eligible for a two-point reduction under §4C1.1 as he has no prior convictions. As a result, Mr. Nikolic provides that the guideline imprisonment range should be 78 to 97 months.

**<u>Supervised Release</u>**

Mr. Nikolic agrees to the supervised release provisions as outlined by the PSR.

**<u>Supervised Release Conditions</u>**

Mr. Nikolic agrees to the terms outlined by Probation Officer Jessica S. Cook.

**Probation**

Mr. Nikolic agrees he is eligible for not less than one not more than five years' probation because the offense is a Class C Felony. 18 U.S.C. § 3561(c)(1).

**Fines**

Mr. Nikolic agrees to the fine provisions and assessments as outlined by the PSR.

**Restitution**

Mr. Nikolic agrees to the restitution calculations in the PSR.

As discussed in further detail below, Mr. Nikolic has diligently worked towards paying as much of his restitution amount as possible prior to sentencing. As of sentencing, Mr. Nikolic has paid approximately $800,000 towards his restitution amount with $160,000 in a BMO Harris account that will be forfeited to the Government. This is in addition to the approximately $1,000,000 the Government has been able to seize/recover through the Defendant's cooperation.

**INTRODUCTION**

Marko Nikolic is truly sorry for what he has done and how he has disappointed those that he loves. He is profoundly humbled and deeply ashamed of himself: that his actions have not only affected his community and his life, but also the lives of his closest loved ones. There is no denying the seriousness of Mr. Nikolic's transgressions, and he does not intend on doing so – he was clearly wrong. Instead, he offers himself to the mercy of this Court, to take into consideration not only those actions that brought him before this Court, but to take into consideration the full value of a man's life when fashioning a reasonable sentence.

Taking together the nature and circumstances of the instant offense, his personal history

and characteristics, Mr. Nikolic respectfully asks this Honorable Court for leniency when imposing a sentence, one that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

**FACTORS TO CONSIDER FOR SENTENCING**

Defendant submits this memorandum in order to assist the Court in fashioning the most appropriate sentence by addressing each of the available sentencing options under the provisions of 18 U.S.C. §3553(a), as now constitutionally required by the Supreme Court in light of *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). This memorandum will supplement the Presentence Report ("PSR") and submit reasons why this Court should consider and grant a sentence that is below or "in variance" with the advisory Guideline level based on various factors in mitigation.

The purpose of sentencing as reflected in 18 U.S.C 3553 is not to be punitive but rather to be just based on the offense and offender. Under 18 U.S.C. §3553(a)(2) the Court shall impose a sentence sufficient, but not greater necessary to reflect the purposes of sentencing, including, the need for just punishment, the need for deterrence, protection of the public, and the rehabilitation of the defendant. §3553 also orders courts to consider the history and characteristics of the defendant as well as the nature and circumstances of the offense.

**Nature of Offense**

Marko Nikolic accepts full responsibility for his actions and provides to this Honorable Court he did commit the offense as charged and he makes no excuses for his actions whatsoever.

It should be noted that this conspiracy was the original product of his sister Maya and Nebojsa Simeunovic. They began in January of 2020 by submitting false applications for loans from the Small Business Administration under the Economic Injury Disaster Loan (EIDL)

Program and receive Government funding. It was in the summer of 2020 that Nebojsa and Maya asked him to assist in preparing and submitting false loan applications.

As to allegations of attempted flight in the Government's Version of the Offense, Mr. Nikolic respectfully provides that he was in the process of moving to Florida, not fleeing the country. Mr. Nikolic not only planned to move to Florida, but already had accommodations in place at the time of his arrest.[4]

The Government's Version of the Offense also details that Mr. Nikolic bought numerous material goods including a Lamborghini Urus, which along with other assets, has since been liquidated and applied towards his restitution amount.

Following his sentencing, Marko Nikolic will become a convicted felon for the first time in his life. As noted in his Presentence Investigation Report, he will likely be amenable to arrest for violations of the Immigration and Nationality Act upon his judgement entered in the instant matter.

**Cooperation and Restitution**

Since the time of his arrest, Mr. Nikolic has reflected on the greed and poor decisions that have brought him before this Honorable Court, and he has diligently worked towards righting the wrongs that he has committed.

Mr. Nikolic has provided substantial assistance to authorities doing everything and anything asked of him by the Government. Mr. Nikolic's assistance includes testifying before the Grand Jury, assisting the Government to seize/claim over $1,000,000 stemming from the instant offense, and numerous proffer sessions even resulting in the indictment of his own fiancé as a co-defendant.

---

[4] This was verified by the parties after providing the Government with the specific location of his apartment and the contacts of his landlord.

In addition to his assistance in cooperating with the Government, Mr. Nikolic has prioritized his restitution amount of $3,446,030. At the time of sentencing Mr. Nikolic will have paid approximately $800,000 of his restitution amount with another $160,000 to be forfeited to the Government from a BMO Harris account ultimately resulting in close to $1,000,000 of his restitution paid at sentencing.

**History and Characteristics**

The PSR accurately explains the personal background of Marko Nikolic and so that will not be repeated in full here (PSR ¶55-88). Mr. Nikolic was born in Belgrade, Serbia where he experienced a happy childhood and did well in school until approximately 2002. Growing up, Mr. Nikolic was subjected to corporal punishment, which he felt was "normal," Around 2002, Mr. Nikolic's parents moved at which time there were marital issues within the home. Mr. Nikolic's parents would fight amidst fights centered around issues such as faithfulness, stealing, and money. His parents divorced when he was 15 years old, and he began to move between homes. After the divorce, there were times his father could not financially support, and his mother would "kick him out" because she was living with another man who did not care for Mr. Nikolic. After his parents' divorce, Mr. Nikolic began drinking alcohol and got into a motorcycle accident while consuming alcohol.

At the time of his parents' divorce, Mr. Nikolic was enrolled in a high school program to become a dental hygienist, but shortly thereafter, abandoned those plans. Mr. Nikolic subsequently applied for a student visa in college and came to the United States the summers of 2009 and 2010, with an extended visa after the summer of 2010, living in the Florida Keys during those times.

Mr. Nikolic graduated in 2013 from the University of Singidunum in Belgrade, Serbia with a degree in marketing and logistics.

In 2014, after following his bachelor's degree, he returned to the United States where he has remained, but for one trip to Serbia in 2017.

Since obtaining his commercial driver's license in 2015, Mr. Nikolic has been a hard-working individual, diligently gaining experience in the logistics and trucking field. He worked his way up through the industry and developed his own successful business as an independent contractor, owning his own semitrucks, and working in dispatch. His conduct in this case that brings him before this Honorable Court ultimately will cost him his career, a career he put everything into, a reality Mr. Nikolic acknowledges, and accepts responsibility for entirely.

Mr. Nikolic is engaged to Milica Sumakovic whom he has known since high school. As ordered by this Honorable Court, he has since had no contact with Ms. Sumakovic, but hopes to one day get married at the conclusion of his sentence.

Following his arrest for the instant offense, Mr. Nikolic's parents were upset and ashamed and did not speak to him for approximately 18 months subsequent to his arrest. When interviewed by United States Probation, Mr. Nikolic's friend, Milka Mladenovic, advised she believes he has become a better person as a result of his indictment. Ms. Mladenovic provides that he appears to appreciate his family, friends, and freedom more and that he is more focused on his future and having a "normal life" to include getting married and having children.

During his time in custody, Mr. Nikolic has dedicated himself to using his time productively in order to best help himself upon his release from his sentence for the instant matter. Mr. Nikolic has completed a number of certificates and programs, including but not limited to: participating in the Beyond Prison Series, successfully completing T.O.P.U.C.U.

("The Only Person U Cheat Is U"), Personal Finance and Small Business Ownership Course, Understanding Unconscious Bias, Choosing and Using the Best Solution, Building Your Presentation, Become a Great Listener, Self-Improvement for Lifelong Success, Generating and Evaluating Alternatives, Interacting with Customers, Establishing Self-Confidence for Life, Ensuring Successful Presentation Delivery, Difficult People, Cultivating Relationships with Your Peers, Communicating with Confidence, Get Organized, Making and Carrying Out Tough Decisions, Reaching Sound Conclusions, Receiving Feedback, Uncovering and Utilizing Your Talents and Skills, The Essentials for Anger Management, The Art of Staying Focused, and the Peace Education Program. (See Exhibit Certificates).

**Defendant's Controlled Substance Use**

The court should consider Marko Nikolic's history of controlled substance use with regard to alcohol, marijuana, pills, and cough syrup. Sentencing courts have the authority to and have imposed below-guideline sentences on the basis of an individual's drug addiction. See, e.g., *United States v. Richardson*, No. 03cr474, 2008 U.S. Dist. LEXIS 92059, *1-2 (N.D. Ill. Nov. 13, 2008) ("Taking into account the Defendant's age, her drug addiction, and the lack of violent behavior despite the presence of guns, the Court imposed a sentence substantially below the guideline range . . .").

During his Presentence Investigation Interview, Mr. Nikolic detailed that he first began to consume alcohol while in high school, at parties. He drinks at most daily and at least two to three days per week. Mr. Nikolic acknowledged that he loves to drink alcohol and that it has caused problems in his life including being ticketed for drinking in Serbia as well as a vehicle accident in which he crashed his motorcycle.

Mr. Nikolic was first introduced to cocaine by his uncle at the age of approximately 15 and his use at that time was severe to the point that he suffered from "facial strokes" as a result. At the time of his arrest, Mr. Nikolic used cocaine approximately twice a month at parties. Mr. Nikolic previously used mushrooms twice in 2013. At the time of his arrest, Mr. Nikolic took unprescribed Adderall two to three times a week. Mr. Nikolic first tried marijuana in his 20s and used it every four to five months prior to his arrest. Mr. Nikolic asks the court to take his previous substance use into consideration when determining a sentence.

**Character Letters**

**Tatjana Nikolic** and **Miroslav Nikolic** are Marko Nikolic's parents. Tatjana and Miroslav state in pertinent part:

> "Marko has always been [a] good and great child. Beloved in society, good pupil and a good student. He always liked to read a lot, travel, learn languages, play sports, and go fishing.
> …
> When he came to America, he had big plans for his future and began to realize them slowly. He founded his own company and had a good and successful start. He ran his company well, was a good boss to his employees, and everything was working great until corona virus came. Then, everything went downhill, and what happened in him then, to make wrong steps and decisions in his life, only he knows.
>
> When he was arrested, we didn't hear from each other for almost two years, except when his grandfather died. We know how deeply it hurt him. Since January of this year, we hear each other regularly.
>
> We talked a lot about everything, especially how deeply and how much he regrets everything he did wrong. He is aware that this huge mistake led to the fact that we neither heard nor saw each other for Christmas, New Years, birthdays, and unfortunately, not even for the funerals of our loved ones.
>
> He read a lot, The Bible helped him to understand and accept his time in prison. A lot of time[s] he said that prison put him back on track. As parents, we love our child without limits, but we never approve of his mistakes. We are sincerely and deeply sure that he sincerely regrets and that he will never repeat his mistakes again and that he will try to fix everything he can."
>
> (Letter attaches as Exhibit A.)

**Goran Macura** grew up in the same neighborhood as Marko Nikolic in Serbia. Mr.

Macura states in pertinent part:

> "Marko struck me as an intelligent, well-educated person and someone who was
> dedicated to work[ing] hard towards the bright feature and accomplishment of his
> dreams. When with friends, Marko was always generous and kind to everyone. He
> was always willing to help everyone, and everyone could always rely on him."
> …
> Marko is intelligent and mature, and I am sure that he is well aware of his mistake.
> By knowing his character, I know that he feels deep regret and that he suffers
> because of the pain that this has caused to his family. I am confident that he will
> take this as a lesson and that he will never allow himself to make such poor
> judgment again or to engage in any illegal activities. Marko deserves a second
> chance in life, and I know that he will not take it for granted."

(Letter attaches as Exhibit B.)

**Milka Mladenovic** is close friends with Marko Nikolic. Ms. Mladenovic states in

pertinent part:

> "I met Marko when I moved to Chicago, and he helped me during a tough time. He
> not only helped me find more work when I really needed it but also supported and
> guided me. Marko has always been generous and selfless.
>
> There are countless examples that shows Marko's compassion and willingness to
> go above and beyond for others.
> …
> That time when I haven't spoke to my father, Marko helped fix things between me
> and him. He understood how important family is and made an effort to bring us
> closer by helping us communicate and overcome our issues.
> …
> Marko goes beyond being kind in personal relationships. When he started his
> trucking company, he helped a hardworking friend who was struggling financially
> by secretly giving extra benefits on work, that he never practiced before. All that
> without even mentioning to him till today.
> …
> Despite everything I know and everything he admitted, beside all mistakes he made,
> his core is good. He would never hurt or harm anyone. He was always
> understand[ing], compassionate and sensitive to people around him."

(Letter attaches as Exhibit C.)

**Milica Sumakovic** is Marko Nikolic's fiancé. Ms. Sumakovic states in pertinent part:

"He drove [a] truck for years, I remember that there were times that he didn't come home for weeks because he was driving [a] truck all the time spending sometimes even holidays separated from me and his family. He would sleep [at] truck stops every single night for weeks.

Before driving truck[s], Marko was [a] busboy in [a] restaurant and he would work double shifts in that restaurant spending countless nights and days in there cleaning tables just so we can have [a] better life.
…
I fell in love with the attention that he always gave me. He always thought about me if I was hungry or I need anything, he was always there for me. When I had [the] hardest time in my life, losing people that I love, Marko was always next to me giving me his unconditional love and support.

Whenever I wasn't feeling well, he would make me tea, make me dinner and bring medications. We have a little dog named Charlie, that I got from Marko as a birthday surprise 7 years ago. Marko loves him very much, he always took care of him, making sure he is never hungry, always happy, and he also liked to sleep with him.

I left my family back in 2014 as the only child to my parents to live life here with Marko. He is [the] love of my life and I miss him very much. After his arrest back in October 2020, I talked to him every day for hours until October 2022 when I was indicted. Unfortunately, I am not able to talk to him or see him because of the wrong decisions that we both made in the past.

[The] past three years were very difficult for both of us, but I know that this is [a] big life lesson for us. And I know that we both learned a lot from our mistakes and that we will be better people and our love is going to be stronger after everything that we both have been through."

(Letter attaches as Exhibit D.)

**Aaron Regans** details how Mr. Nikolic went out of his way to help Mr. Regans begin his own trucking business (Exhibit E); **Milos Nikolic** provides he has always known Marko Nikolic as a great friend (Exhibit F); **Sevic Ivan** believes from their time as friends that Mr. Nikolic will never repeat such a mistake (Exhibit G); **Uros Barjaktarevic** awaits the day in which Mr. Nikolic will be the best man at his wedding and knows him to be deeply sorry (Exhibit H); **the Videnovic family** have known him to always be hardworking and conscientious (Exhibit I); **the Milisavljevic family** details how Mr. Nikolic would always check in with their family and how

14

they believe he will never repeat his mistake (Exhibit J); **the Stefanov family** provides Mr. Nikolic is a beloved nephew and cousin who was always there to help others (Exhibit K), and **Damjan Cvetkovic**, a monk from the Bukovo monastery, details Mr. Nikolic as someone who has always helped his family and will learn from this mistake.

**CONCLUSION**

Marko Nikolic knows he has made a horrible mistake and has expressed remorse for his actions. He understands these actions were unlawful and accepts responsibility for this conduct.

WHEREFORE, for the reasons stated above, Mr. Nikolic respectfully asks this Court for leniency.

Respectfully submitted,

MICHAEL P. GILLESPIE
*Counsel for Marko Nikolic*
Law Offices of Gillespie & Gillespie
1550 N. Northwest Hwy.
Suite 203
Park Ridge, IL 60068
Tel. (224) 361-3111
michael@gillespieandgillespielaw.com

Michael D. Krejci
*Counsel for Marko Nikolic*
Michael D. Krejci & Associates
1770 Park Street
Suite 205
Naperville, IL 60563
(630)388-0600
Email: krejcilaw@gmail.com

## CERTIFICATE OF SERVICE

I hereby certify I electronically filed the foregoing with the Clerk of the Court for the United States, Northern District of Illinois and said filing complies with Fed.R.Crim.P.49, Fed.R.Civ.P.5, LR 5.5, and the General Order on Electronic Case Filing (ECF) pursuant to the district court's system as to ECF filers.

_____

MICHAEL P. GILLESPIE
*Counsel for Marko Nikolic*
Law Offices of Gillespie & Gillespie
1550 N. Northwest Hwy.
Suite 203
Park Ridge, IL 60068
Tel. (224)-361-111
michael@gillespieandgillespielaw.com

Michael D. Krejci
*Counsel for Marko Nikolic*
Michael D. Krejci & Associates
1770 Park Street
Suite 205
Naperville, IL 60563
(630)388-0600
Email: krejcilaw@gmail.com