**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 20-CR-750-6** |
| **v.** | ) | |
| | ) | **Judge Nancy Maldonado** |
| **MILICA SUMAKOVIC,** | ) | |
| **Defendant.** | ) | |

**DEFENDANT'S SENTENCING MEMORANDUM**

NOW COMES, the Defendant, **MILICA SUMAKOVIC,** by and through her attorney, **RICHARD M. BEUKE**, and pursuant to Rule 32 of the Federal Rules of Criminal Procedure, 18 U.S.C. § 3553(a), the Sixth Amendment to the Constitution of the United States, and the Order entered by this Court on June 28, 2022 (Doc. 93), respectfully submits the following Sentencing Memorandum in support of her request for a sentence of probation with a condition of deportation. Such a sentence is sufficient, but not greater than necessary to meet the goals of sentencing, and in support thereof, Ms. Sumakovic states the following:

## I.   INTRODUCTION

Milica Sumakovic made decisions during the COVID-19 pandemic and in its wake that were deceitful, fraudulent, and criminal – three characteristics that neither define nor describe her character. She is aware that by participating in this scheme, she not only conned her way into money she was not entitled to receive, but she also deprived others that were entitled to receive it. Driven by blind loyalty, naiveté, and greed, she took advantage of the vulnerability created in the wake of the pandemic. For that, she is endlessly sorry, and in repentance, she has shown immediate remorse for her actions, paid restitution for her crimes, and begun the long process of taking back control of her life.

1

With consideration of the sentencing factors, as detailed below and in the Presentence Investigation Report ("PSR") prepared by United States Probation Officer Jessica Cook (Doc. 199), Ms. Sumakovic respectfully asks this Court to sentence her to probation with a condition that she be deported.

## II.    STATUTORY PENALTIES

As a preliminary matter, the statutory penalties for the crimes to which Ms. Sumakovic has pled guilty are as follows:

- Count 5 – The Court may sentence Ms. Sumakovic to a maximum term of imprisonment of 20 years on Count 5.  18 U.S.C. § 1343.  Because it is a Class C Felony, 18 U.S.C. § 3559(a)(3), Ms. Sumakovic is statutorily eligible for a sentence of probation that is not less than one nor more than five years.  18 U.S.C. § 3561(c)(1).  If Ms. Sumakovic is sentenced to a term of incarceration on Count 5, the Court is permitted to impose a term of supervised release no longer than 3 years.  18 U.S.C. § 3583(b)(2).  The maximum fine that can be imposed for Count 5 is $250,000. 18 U.S.C. § 3571(b)(3).  The Court must also impose a special assessment of $100.  18 U.S.C. § 3013.

- Count 31 – The Court may sentence Ms. Sumakovic to a maximum term of imprisonment of 20 years on Count 31.  18 U.S.C. § 1956(a)(2)(B)(i).  Because it is a Class C Felony, 18 U.S.C. § 3559(a)(3), Ms. Sumakovic is statutorily eligible for a sentence of probation that is not less than one nor more than five years.  18 U.S.C. § 3561.  If Ms. Sumakovic is sentenced to a term of incarceration on Count 31, the Court is permitted to impose a term of supervised release no longer than 3 years.  18 U.S.C. § 1956(b)(2).  The maximum fine that can be imposed for Count 31 is $500,000.  18 U.S.C. § 3571(b)(1).  The Court must also impose a special assessment of $100.  18 U.S.C. § 3013.

### III.    SENTENCING GUIDELINE CALCULATIONS

The sentencing guideline range applicable in this case was contemplated at length in both the Presentence Investigation Report ("PSR") prepared by United States Probation Officer Jessica Cook (Doc. 199) and the Government's Version of the Offense attached to the PSR.    The November 2021 version of the Guidelines Manual was in effect at the time those documents were prepared, so that was the version referenced therein.    The November 2023 Guidelines Manual has since been adopted and shall be used to calculate the applicable guideline range in this case. U.S.S.G. § 1B1.11.

The Government and Officer Cook have both correctly calculated Ms. Sumakovic's criminal history score as zero, placing her in a Criminal History Category of I.    The November 2023 Guidelines Manual adopted an amendment under Section 4C1.1 that offers an additional 2-level decrease to defendants with a criminal history score of zero who meet its enumerated criteria. U.S.S.G. §4C1.1.    Ms. Sumakovic meets those criteria and is entitled to the decrease.

Because the Section 4C1.1 decrease was not part of the version of the Guidelines Manual used by Officer Cook, the calculation of 24 for her Total Offense Level is high, and the appropriate offense level is 22.    Regardless of the calculation used by the Court, Ms. Sumakovic humbly joins Officer Cook's recommendation in asking this Court to administer a sentence below the guideline range.    Specifically, she asks this Court to sentence her to probation with a condition that she be deported.

### a.    Count 5 – Base Offense Level

In Count 5, Ms. Sumakovic pled guilty to committing wire fraud in violation of 18 U.S.C. § 1343.    Pursuant to Sections 2B1.1(a)(1) of the United States Sentencing Guidelines Manual ("Sentencing Guidelines"), the base offense level for Count 5 is 7.    U.S.S.G. § 2B1.1(a)(1).

**b.  Count 5 – Specific Offense Characteristic (b)(1)**

Section 2B1.1(b)(1)(I) of the Sentencing Guidelines requires a 16-level increase in the offense level because in her role in the conspiracy, she participated in $2,550,000 of loss.  U.S.S.G. § 2B1.1(b)(1)(I).  The new base offense level for Count 5 is 23.

**c.  Count 5 – Specific Offense Characteristic (b)(10)**

Section 2B1.1(b)(10)(C) of the Sentencing Guidelines requires an additional 2-level increase where "the offense otherwise involved sophisticated means and the defendant intentionally engaged in or caused the conduct constituting sophisticated means."  U.S.S.G. § 2B1.1(b)(10)(C).  Application Note 9 to Section 2B1.1 includes "[c]onduct such as hiding assets or transactions, or both, through the use of . . . corporate shells . . ." in its definition of "sophisticated means."  Ms. Sumakovic submitted an SBA Loan application that was not granted for Trucker Island, Inc. and opened a BMO Harris bank account in its name to house the anticipated SBA Loan proceeds.  Thus, the 2-level enhancement should be applied and the offense level for Count 5 is 25.

**d.  Count 5 – Adjusted Offense Level**

When all the adjustments listed above are considered, Ms. Sumakovic's Adjusted Offense Level for Count 5 should be 25.

**e.  Count 31 – Base Offense Level**

In Count 31, Ms. Sumakovic pled guilty to money laundering in violation of 18 U.S.C. §1956(a)(2)(B)(i).  Pursuant to U.S.S.G. § 2S1.1(a)(1), because the offense level for the underlying offense detailed in Count 5 can be determined, that calculation serves as the base offense level for Count 31.  As detailed above, the total adjusted offense level for Count 1 is 25, thus the base offense level for Count 31 is 25.

4

**f.  Count 31 – Specific Offense Characteristics**

Section 2S1.1(b)(2)(B) of the Sentencing Guidelines requires a 2-level increase in the offense level where the defendant was convicted under 18 U.S.C. § 1956.  U.S.S.G § 2S1.1.  Ms. Sumakovic pled guilty to violating 18 U.S.C. § 1956(a)(2)(B)(i) in Count 5, so her offense level is increased by 2 levels to <u>27</u>.

**g.  Count 31 – Adjusted Offense Level**

When all the adjustments listed above are considered, Ms. Sumakovic's Adjusted Offense Level for Count 31 remains at <u>27</u>.

**h.  Grouping**

Section 3D1.2(c) of the Sentencing Guideline instructs the Court to group counts where "one of the counts embodies conduct that is treated as a specific offense characteristic in, or other adjustment to, the guideline applicable to another of the counts."  U.S.S.G. § 3D1.2(c).  Ms. Sumakovic agrees with Officer Cook and the Government that here, the wire fraud embodied in Count 5 constitutes a specific offense characteristic of the money laundering embodied in Count 31.  *See* U.S.S.G. § 2S1.1(b).  Therefore, Counts 5 and 31 are grouped for purposes of calculating Ms. Sumakovic's sentencing guidelines range.

When Counts are grouped together pursuant to U.S.S.G. § 3D1.2(c), "the offense level applicable to a Group is . . . the highest offense level of the counts in the Group."  U.S.S.G. § 3D1.3(a).  Thus, as detailed above, the offense level applicable to this Group should be <u>27</u>.

**i.  Acceptance of Responsibility**

Section 3E1.1 of the Sentencing Guidelines provides relief to a defendant who "clearly demonstrates acceptance of responsibility for h[er] offense" in the form of a 2-level decrease to her guidelines range.  U.S.S.G. § 3E1.1(a).  As both the Government and Officer Cook have

indicated, Ms. Sumakovic has clearly demonstrated that she accepts responsibility for her participation in the charged fraud scheme; she remained in the United States upon learning that she would likely be charged, she encouraged her co-Defendant Marko Nikolic to share his story with the Government knowing that it would expose her to criminal liability, she shared her own story with the Government, and she changed her plea to Guilty without the protection of an agreed-upon sentence. Furthermore, within 24 hours of her self-surrender, Ms. Sumakovic paid $430,000 in restitution to the United States government. A 2-level decrease to her guidelines range is more than appropriate here.

Additionally, when a defendant qualifies for the 2-level decrease described above, she is entitled to an additional 1-level reduction "upon motion of the government stating that the defendant has assisted authorities in the investigation or prosecution of h[er] own misconduct by timely notifying authorities of h[er] intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." U.S.S.G. § 3E1.1(b). The Government has signaled an intent to so move this Court and the request for an additional 1-level reduction should be granted.

In total, for Ms. Sumakovic's timely acceptance of responsibility, her Guideline Range Calculation should be reduced by 3 levels, to <u>24</u>.

### j. <u>Group 1 – Counts 5 and 31 – Criminal History Reduction</u>

Section 4C1.1 of the Sentencing Guidelines offers further relief in the form of a 2-level decrease to defendants who, among other criteria, "did not receive any criminal history points from Chapter Four, Part A." U.S.S.G. § 4C1.1(a). Ms. Sumakovic meets all the criteria in Section 4C1.1(a), so her Guideline Range Calculation should be reduced by another 2 levels to <u>22</u>.

### k. **Group 1 – Counts 5 and 31 – Total Offense Level**

Based on all of the calculations above, the Total Offense Level for Counts 5 and 31 grouped together is **22**.

### l. **Guidelines Range**

When a Total Offense Level of 22 is cross-referenced with a Criminal History Category of I, Ms. Sumakovic is left with a recommended guideline range of 41-51 months of imprisonment. While the Guideline Range is instructive to the Court, and can be a useful tool, Ms. Sumakovic respectfully joins Officer Cook in requesting a downward variance from the guideline range. Specifically, she humbly asks this Court to sentence her to probation with a condition that she be deported.

## IV. **SENTENCING FACTORS**

The Supreme Court of the United States has repeatedly held that the primary touchstone of criminal sentencing is the mandatory factors set forth in 18 U.S.C. § 3553(a) – not the advisory Sentencing Guidelines. *See, e.g., Nelson v. United States*, 555 U.S. 350, 352 (2009)(*per curiam*)("The guidelines are not only *not mandatory* on sentencing courts; they are also not to be *presumed* reasonable.")(emphases in original). In fashioning a sentence that comports with the statutory mandates of § 3553(a), the Court "may *not* presume that the Guidelines range is reasonable," but instead "must make an individualized assessment based on the facts presented." *Gall v. United States*, 552 U.S. 38, 50 (2007). It is the Court's duty to "make its own reasonable application of the § 3553(a) factors, and to reject (after due consideration of) the advice of the Guidelines" if the result suggested does not comport with the sentencing court's view of an appropriate sentence. *Kimbrough v. United States*, 552 U.S. 85, 113 (2007)(Scalia, J., concurring).

The Seventh Circuit has similarly stated that the sentencing court must impose an appropriate sentence under § 3553(a) "without any thumb on the scale favoring a guideline sentence." *United States v. Sachsenmaier*, 491 F.3d 680, 685 (7th Cir. 2007). The court's "choice of sentence, whether inside or outside the guideline range, is discretionary," and the court has substantial "freedom to impose a reasonable sentence" outside the advisory range. *United States v. Demaree*, 133 S. Ct. 2072 (2013). A sentence below the advisory guideline range is appropriate where the reasons for selecting that sentence "are rooted in [§] 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency." *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

Pursuant to § 3553(a), the sentencing court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes [of sentencing.]" 18 U.S.C. § 3553(a). To that end, the court is tasked with considering: the nature and circumstances of the offense; the history and characteristics of the defendant; the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need for the sentence imposed to afford adequate deterrence to criminal conduct; the need for the sentence imposed to protect the public from further crimes of the defendant; the need for the sentence imposed to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences available; the kinds of sentence and the sentencing range established in the sentencing guidelines; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). After consideration of those factors, as discussed below, it will be clear to the Court that a sentence below the guideline range is sufficient

and any sentence greater than probation with a condition that she be deported would be greater than necessary to meet the purpose of sentencing.

    **a.  The History and Characteristics of Ms. Sumakovic**

It is important for the Court to consider the history and characteristics of Ms. Sumakovic as a person in fashioning an appropriate sentence. 18 U.S.C. § 3553(a). Ms. Sumakovic's personal history and characteristics paint the picture not of a craven fraudster, but of a loving and loyal daughter, friend, and fiancée. Ms. Sumakovic's parents – Mica and Milovan, aunt – Sladana, cousins – Teodora and Jovan, friends – Milka, Marija, Olena, and Goran, future Mother-in-Law – Tatjana, and co-Defendant – Marko, all describe a woman who is the sunshine of their life, and it is with deep remorse and regret that she humbly asks this Honorable Court not to let her actions in this case eclipse that light. *See* **Group Exhibit 1**.

Milica Sumakovic came to the United States from Serbia in 2014 in search of the American Dream; she stands before the Court today living a nightmare. Growing up in Belgrade, life was happy, but it was not always easy. Ms. Sumakovic had (and still has) a very loving and supportive mother and father who worked very hard to make sure that she had what she needed. Her father – a taxi driver – and her mother – a teacher – often made great sacrifices just to ensure that their only daughter did not go without. They wanted desperately to have more children but spent everything they had to keep their one and only child alive and healthy in a war-torn country. Much to their dismay, they never gave Ms. Sumakovic any siblings so she leaned heavily on her extended family, growing to see her cousins as brothers. In many ways, the story of Ms. Sumakovic's life up to today has been defined by a yearning to take care of her family in return for the love and support they have given her.

When Ms. Sumakovic turned 16 years old, her life changed forever and unbeknownst to her, set her on a course directly to this courtroom. The decisions she has made along the way are what have held her back from achieving her dreams and aspirations. When she was 16 years old, going to one of the top high schools in Belgrade, she met her Co-Defendant Marko Nikolic and it was love at first sight. She spent the next 16 years of her life following the love of her life wherever he went: from Serbia to Miami to the open road in the cab of a semi-truck to the Chicagoland area and ultimately to this Court. She took interest in Marko's line of work and learned the trucking business inside-and-out. She earned several certificates to improve her knowledge of the trucking business (Doc. 199, p. 13-14), and started two trucking companies. At its peak, one of those companies – MMM Solutions – had 30 trucks on the road. Ms. Sumakovic deeply regrets the decisions she has made and the influence she has allowed Marko to have over those decisions, but she looks forward to a time when she and Marko can be reunited in their homeland of Serbia where they will work hard to correct the course of their lives.

Letter after letter from those that know her best describe Ms. Sumakovic as a woman who will not think twice about putting others before herself. **<u>Groub Exhibit 1</u>**. Whether it was helping her younger cousin manage his asthma the way she managed hers, helping her aunt watch after her children, or caring for homeless animals, she always gave what she had to those she loved. When she moved to the United States, she did not leave that character trait behind. The friends she has made here – friends who have never met her family in Serbia – describe the same person as those who have known her the longest. Her friend Milka describes a woman who is unwaveringly loyal, not waiting to be asked to step in and help. Her friend Olena describes a woman whose character extends beyond friendship and into the workplace, always contributing to the solution instead of

the problem. And her Parish Priest describes a deeply devout woman who volunteers her time and talents to her church and community.

The way Ms. Sumakovic has carried herself since Marko's arrest bears witness to the character traits described in the letters from her loved ones. Ms. Sumakovic was with Marko when he was arrested. A chaotic time in her life, to say the least, Ms. Sumakovic stood tall and faced the consequences of her actions. While her co-Defendants all fled or attempted to flee from law enforcement, Ms. Sumakovic remained in the United States within arms' reach of the Government. She spoke with Marko Nikolic on a near daily basis while he was kept in federal custody with the knowledge that the Government was likely to come for her next. Knowing it would likely lead to her own arrest, she encouraged Marko to cooperate with the Government. Then, when she was ultimately indicted and taken into custody, she did not hesitate to cooperate herself.

All Ms. Sumakovic has ever wanted is to marry Marko, have children of her own, and share her love with those closest to her. She has learned the hard way that money does not buy happiness and has since devoted her life to making up for the mistakes of her past. Within days of surrendering to the custody of the U.S. Government, she clawed back the $430,000 in fraud proceeds she sent to Serbia and paid it back to the Government. She has joined the Holy Orthodox faith, volunteers in her community, and has strengthened her connection to her family. As she continues to build back the life she has always wanted, Ms. Sumakovic humbly asks this Court for a sentence of probation with a condition that she be deported to Serbia.

### b. **The Nature and Circumstances of the Offense**

The Court must also consider the nature and circumstances of the offenses with which Ms. Sumakovic has pled guilty when determining a sentence that is sufficient but not greater than necessary. 18 U.S.C. § 3553(a). Ms. Sumakovic understands that her conduct in this case has not

11

only hurt herself and her family but has likely deprived economic freedom and assistance from those who the EIDL program was intended to help. While she has lived most of her life with humility, honesty, and love, she is painfully aware of the fact that her actions in this case starkly overshadow all the good things she has accomplished.

Ms. Sumakovic was involved in a scheme to defraud the government of money that was intended to help honest hardworking American business owners survive during one of the most economically turbulent times in this country's recent history. While she did not devise the scheme, and blindly followed her fiancée into fraud, Ms. Sumakovic understands that her role in the fraud scheme allowed it to exist and stole money that did not belong to her. A mixture of love, loyalty, and naiveté, seasoned with greed allowed her to put her morals aside to make a quick buck.

Ms. Sumakovic gave into the allure of easy money and lent her business, her time, and her experience to the fraud scheme. Together with her co-defendants, they perpetuated a scheme that paid dividends at first, but resulted in disaster. When she learned of the scheme, she did not stop it from continuing. Instead, Ms. Sumakovic took advantage of the scheme using businesses she legitimately owned and operated to apply for loans to which she was not entitled. When she was asked to assist in obtaining loans for other companies she did not own, she gave herself to the operation. It must be noted that in the PSR, in what must be a typographic error, it states that Ms. Sumakovic "created e-mail accounts and passports to assist" Marko; she certainly created e-mail accounts and *passwords* but has never created any passports or otherwise forged any identification documents, nor has she ever been accused of doing so. (Doc. 199, p. 6, ¶ 19). Her co-Defendant Branko Aleksic, on the other hand, was arrested with "various IDs and drivers' licenses from different states belonging to both [himself] and other individuals." (Doc. 186, p. 2-3).

While the scheme was not violent, and no violence was used to affect its goals, the economic assistance it potentially robbed from other business owners and the economic strain it potentially put on an otherwise strained economy are inexcusable. It was never her goal to live a life of crime, but in blind trust in the man she loved, she abandoned herself – a decision she regrets every day of her life. When Ms. Sumakovic first applied for an SBA Loan for a company she legitimately owned and operated, she lied about being a United States citizen; but she also kept up with the repayment obligations of that loan for a whole year, even after she was charged in this case. The payments did not stop until January, when the bank closed her account leaving her unable to pay any bills.

This fraud scheme was a small chapter in Ms. Sumakovic's life, but she understands that her participation in it will have an outsized effect on the rest of her life. It is with that understanding that she humbly asks this Honorable Court for a sentence of probation with a condition that she be deported to Serbia.

**c. <u>Deterrence from future criminal activity and the need to protect the public from further crimes.</u>**

An important factor for the Court to consider in fashioning a sentence that is sufficient, but not greater than necessary to meet the goals of the sentencing statute is the need for deterrence from future criminal activity and the need to protect the public from further crimes. 18 U.S.C. § 3553(a). Ms. Sumakovic does not pose a risk of recidivism, and this experience has already been sufficient to assure that she never commits another crime for the rest of her days.

Ms. Sumakovic is 33 years old, and for more than ten years has been without the embrace of her mother and father. She has spent the past 18 months in near solitude, sometimes going days without anyone but her beloved dog Charlie. She is separated from her family by an ocean and several national borders and separated from Marko by the bars of the Federal Bureau of Prisons.

For over six months upon her surrender, she was incarcerated within the walls of her home 24 hours per day, and for over eleven months since then, she has been on a strict curfew for 16 hours per day with electronic monitoring. All the while, she has never been accused of breaking a rule, violating an Order, or otherwise disrespecting the Court or its Agents. Over the past 18 months, she has missed birthdays, weddings, holidays, and funerals – memories she knows she will never get back. Ms. Sumakovic's home incarceration alone is enough to prevent her from ever committing a crime again.

Furthermore, Ms. Sumakovic longs to be reunited with her family and will voluntarily self-deport back to Serbia as soon as this Court allows it. As displayed in the letters from her family, they too long for that reunion. *See* **Group Exhibit 1**. She will wait there to be reunited with Marko so together they can start a family with all the lessons they have learned to guide the way forward. There is no chance that she will harm the public again. If this Court issues a term of probation, Ms. Sumakovic will agree to deportation as a term of said probation. *See* 18 U.S.C. 3563(b)(21). There is no reason she should continue to financially burden the American taxpayers and she will agree to leave the American Dream behind forever. With that in mind, she humbly asks this Honorable Court to sentence her to probation with a condition that she be deported.

**d. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

Finally, in determining a sentence that is sufficient but not greater than necessary to meet the goals of sentencing, this Court must consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. 18 U.S.C. § 3553(a). A sentence within the calculated guideline range, when compared to the

sentences received by Ms. Sumakovic's co-defendants, would be greater than necessary and would result in an unwarranted sentence disparity.

The scheme in which Ms. Sumakovic took part resulted in the indictment of seven co-defendants, most of whom are still fugitives of the law. The two that are not fugitives have pled guilty to a higher volume of conduct than Ms. Sumakovic while paying a smaller proportion of the proceeds of their fraud than Ms. Sumakovic, and both have been assessed a sentence below the guideline range. Specifically:

- Marko Nikolic was one of the most active members of the scheme. He recruited members both charged and uncharged, including Ms. Sumakovic, to participate in the scheme, fraudulently opened shell companies to participate in the scheme, and opened several bank accounts to hide money that was fraudulently acquired through the scheme. In total, he recouped nearly $3.5 million in fraudulent funds from the U.S. Government. Following a plea of guilty in this case, Mr. Nikolic was sentenced to **50 months** and 2 years of supervised release. The Plea Agreement in his case calculated an advisory guideline range of 97-121 months. (Doc. 170).

- Branko Aleksic was recruited into the scheme by Mr. Nikolic and a fugitive co-Defendant. In his role, he submitted fraudulent loan applications for a company he owned, in addition to reinstating in his own name dissolved companies that he did not own so that he could submit fraudulent loan applications for those companies. Additionally, he recruited other business owners to participate in the scheme and opened several bank accounts for the sole purpose of hiding that money. He was arrested at the airport waiting to board a one-way flight to Europe, carrying fraudulent documents, tens of thousands of dollars in cash, and hundreds of thousands of dollars in jewelry, clothing, and watches.

(Doc. 186, p. 2-3, 12).  Upon his arrest, he cooperated, but did not pay back any of the money he stole.  Following a plea of guilty, Mr. Aleksic was sentenced to **35 months** in prison, with 2 years of supervised release.  The Plea Agreement in his case calculated an advisory guideline range of 41-51 months.  (Doc. 173).

- The other co-defendants – Maja Nikolic, Nebojsa Simeunovic, Mijajlo Stanisic, and Dordje Todorovic – have all evaded capture and remain fugitives of the law with tens of millions of dollars in fraud proceeds.

While in no way does Ms. Sumakovic seek to minimize her participation or culpability, she played a much smaller role in the scheme than all her co-Defendants and specifically the two that have already been sentenced.  She never recruited anyone to join the scheme, yet both Mr. Nikolic and Mr. Aleksic did.  While she helped Mr. Nikolic submit paperwork and conceal funds for businesses she did not own, she submitted fraudulent loan applications for legitimate businesses she did own and began paying them back on time.  The scheme would not have been as vast without her, but she was not as responsible for its growth as her co-Defendants.  When Ms. Sumakovic learned that Federal Law Enforcement was onto the scheme, she did not flee like each of the other co-Defendants that were not in custody.  When Mr. Nikolic was arrested, it was Ms. Sumakovic who convinced him to cooperate, putting her own freedom at risk.  *See* letter from Marko Nikolic, attached hereto as part of **Group Exhibit 1**.  Ultimately, when she was arrested, she shared her story with the Government and within days paid back 100% of the fraud proceeds she sent to Serbia (the conduct making the basis for Count 31).  The fact that she has paid back every cent not only separates her from her co-Defendants, but it also separates her from most of the defendants that come before this Court convicted of financial crimes.  To this date, no other Defendant has shown such remorse for their conduct or taken such steps to answer for it.

The sentences in this case, regardless of culpability, have been consistently below the advisory guideline range. Justice and fairness dictate that Ms. Sumakovic receives a sentence well below the advisory guideline range. The only sentence that is sufficient, but not greater than necessary is a sentence of probation with a condition that she be deported to Serbia.

## V.    <u>CONCLUSION</u>

Ms. Sumakovic takes full responsibility for her actions. Nobody forced her to join the fraud scheme and she knew in her heart that it was not a righteous path. She will forever regret her decisions as she abandons the notion that she will achieve the American Dream. Ms. Sumakovic has spent her life spreading joy to those around her, building bonds with her family and friendships with her community. Certainly, the mistakes she has made will always cloud the story of her life, but they will not eclipse the light from the rest of her life. She is a kind, loyal, loving woman that fell to the pressures of greed. She knows that she must continue to pay for her crimes, she only asks this Court to show mercy in sentencing her. She humbly asks this Court to sentence her to probation with a condition that she be deported to Serbia so she can reunite with her family in the country of her birth and start making a family of her own.

**WHEREFORE**, Milica Sumakovic respectfully asks this Court to issue the only sentence that is sufficient, but not greater than necessary in this case – a sentence of probation with a condition that she be deported to Serbia.

Respectfully submitted,

*/s/ Richard M. Beuke*
Richard M. Beuke
Attorney for the Defendant, Milica Sumakovic

**RICHARD M. BEUKE**
801 N. Cass Avenue, Suite 200
Westmont, Illinois  60559
(312) 427-3050 – phone
(312) 427-1215 – fax

17

## <u>CERTIFICATE OF SERVICE</u>

      I, Nicole Terrazas, hereby certify that Defendant's Sentencing Memorandum was served on April 10, 2024, in accordance with Federal Rule of Criminal Procedure 49, Federal Rule of Civil Procedure 5, and Local Rule 5-1 pursuant to the District Court's system for ECF filers.

                    */s/ Nicole Terrazas*
                    Nicole Terrazas
                    801 N. Cass Avenue, Suite 200
                    Westmont, Illinois  60559
                    (312) 427-3050 – phone
                    (312) 427-1215 – fax