UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 20 CR 750-6 |
| v. | ) | |
| | ) | Judge Nancy Maldonado |
| MILICA SUMAKOVIC | ) | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

Shortly after Congress enacted legislation to assist those weathering economic harm resulting from the Covid-19 pandemic, it became apparent that billions of those dollars were being siphoned away by opportunistic criminals. Stories of high-end sport vehicles purchased with funds deposited into the bank accounts of non-existent businesses frequently made headlines. Defendant was one of many who chose to do so, participating in an organized scheme that sought to obtain more than $40,000,000 from the Covid-19 Economic Assistance Disaster Loan ("EIDL") program fraudulently. To adequately protect the public, punish the defendant, and generally deter others from committing similarly egregious crimes, the Court should impose a sentence at or near the low-end of the accurately calculated guideline range of 41 – 51 months' imprisonment.

**I. The offense of conviction**

*Overview*

Beginning in or around March 2020, and continuing through in or around September 2020, defendant, along with co-schemers Maja Nikolic, her boyfriend Marko Nikolic ("Marko"), Nebojsa Simeunovic, and others knowingly devised,

intended to devise, and participated in a scheme to defraud and to obtain money and property from the Covid-19 Economic Injury Disaster Loan ("EIDL") Program by means of materially false and fraudulent pretenses, representations, and promises. Defendant and her co-schemers submitted and caused to be submitted over 300 applications for loans and advances under the EIDL Program on behalf of businesses and entities purportedly owned by the defendants and others, which applications contained materially false statements and misrepresentations concerning, among other things, the applicants' citizenship status and the purported entities' number of employees, revenues, expenses, type of business, and owners.

Together, the co-defendants collectively submitted hundreds of fraudulent loan applications to the SBA EIDL program in order to steal Covid-19 pandemic relief funds. Some co-conspirators, such as Marko Nikolic, recruited applicants from the Serbian community in exchange for payments from Simeunovic. Co-conspirators then submitted materially false applications for EIDL loans in the names of those who had been recruited. The government's investigation show that intended financial losses resulting from the scheme totaled approximately $47 million, while actual losses totaled over $16 million.

*Futher details regarding defendant's conduct*

Defendant learned of the scheme to defraud in approximately March 2020 when Marko – defendant's boyfriend – prepared and submitted EIDL applications for businesses which he owned and operated, namely, I-Truck Logistics and BG

Cargo. Defendant was aware that both applications included false and fraudulent information relating to the businesses, the number of employees, gross revenues for the 12-month period preceding January 31, 2020, costs of goods sold for that same 12-month period preceding January 31, 2020, and falsely identified Marko Nikolic as a U.S. citizen.

Shortly thereafter, on or about March 30, 2020, while at her home in LaGrange, Illinois, which she shared with Marko, defendant submitted an EIDL application for MMM Solution, Inc., a business she incorporated in October 2017, in which she intentionally made a number of materially false and fraudulent statements. For example, in the application, defendant falsely and fraudulently overstated MMM Solution, Inc.'s number of employees (35), and inflated its gross revenues and costs of goods sold during the 12 months prior to January 31, 2020. Defendant did so intending to increase the amount of funds that she would be approved to receive from the SBA. Defendant also falsely represented in the EIDL application that she was a U.S. citizen, believing it would be more likely to be approved by the SBA than if she truthfully identified herself as a non-U.S. citizen. Defendant falsely certified that the information she provided in the EIDL application was true and correct. Defendant knew at the time that MMM Solution, Inc. did not employ the number of employees represented in the applications, that it had not earned the amounts of revenue or incurred the costs of goods sold stated in the applications, and that she was not a U.S. citizen.

In the MMM Solution EIDL application, defendant requested that she be considered for an EIDL advance, which she knew could be $10,000 based upon her false statement that MMM Solution employed more than 10 individuals. Defendant's request for an EIDL advance was approved by SBA, and on or about April 15, 2020, as a result of the false and fraudulent representations that she made, $10,000 was transmitted in interstate commerce by the SBA to Chase Bank account ending in 5368, which defendant had identified in the application for receipt of the funds.

On or about May 10, 2020, defendant learned that the SBA intended to approve a $150,000 EIDL for MMM Solution, Inc. On or about that same date, defendant electronically signed an SBA Loan Authorization and Agreement on behalf of MMM Solution, Inc. in which she falsely and fraudulently represented to the SBA that the representations in her EIDL application were true, correct, and complete. Defendant also falsely and fraudulently represented in the agreement that she would use the proceeds of the loan solely as working capital to alleviate the economic injury caused by the pandemic. Defendant knew each of these representations was false at the time she submitted the agreement to the SBA.

As a result of this application and her execution of the agreement, on or about May 12, 2020, defendant caused the SBA to disburse approximately $149,900 in EIDL proceeds for MMM Solution, Inc., by means of interstate wire communication, into the Chase Bank account ending in 5368. Defendant knew at the time that neither she nor MMM Solution, Inc. was entitled to the EIDL funds

and that the information that she provided about the business's expenses and employees was material to the SBA's approval and funding of this EIDL loan.

Defendant submitted EIDL applications to the SBA for two additional entities in which she made substantially identical false and fraudulent representations about the EIDL applicant and her immigration status. For example, on or about May 5, 2020, defendant submitted an application for CS Freight, a limited liability corporation which she registered in Illinois in March 2019. As a result of this application, on or about June 23, 2020, defendant caused the SBA to disburse approximately $149,900 in EIDL proceeds for CS Freight, by means of interstate wire communication, into a Fifth Third Bank account ending in 5239. A $10,000 EIDL advance for CS Freight was sent by the SBA to that same Fifth Third bank account. Defendant knew at the time that neither she nor CS Freight was entitled to the EIDL funds and knew that the information that she provided about the business's expenses and employees was material to the SBA's approval and funding of this EIDL loan.

Defendant submitted a third fraudulent EIDL application to the SBA seeking a $75,000 loan on or about October 8, 2020, for a shell entity named Trucker Island, Inc. Prior to submitting this EIDL application, defendant opened an account at BMO Harris Bank in the name of Trucker Island solely for the purpose of receiving any fraudulently obtained EIDL proceeds and registered herself as the agent for this shell entity in Illinois. The EIDL application for Trucker Island, however, was not funded or approved by SBA.

Additionally, defendant was aware that Marko, Maja, and Simeunovic were preparing and submitting fraudulent EIDL applications sought by third-party client-applicants in exchange for approximately 50% of the EIDL proceeds. Defendant knew that, as part of the scheme, Marko, Nikolic, and Simeunovic created shell business entities for fraudulent EIDL loans by reincorporating dissolved businesses, registering them in the names of the client-applicants posing as representatives of the shell business entities, and causing bank accounts to be opened in the names of those shell businesses for the purpose of receiving fraudulently obtained EIDL loans and advances.

Defendant knew that, in order to complete and submit the fraudulent applications on behalf of their client-applicants, Marko, Maja, and Simeunovic met with the applicants, gathered and recorded their personal information (such as name, date of birth, social security number, contact and bank account information), tracked the status of the fraudulent applications, and communicated with the applicants when additional information was needed and when EIDLs were approved.

Defendant was aware that Marko, Maja and Simeunovic also maintained ledgers and other records documenting this information relating to the scheme. At Marko's direction, defendant assisted Marko in preparing fraudulent EIDL applications for the client-applicants. For example, defendant created email accounts and associated passwords needed to assist Marko with the purchase of the dissolved, Florida-based companies over the internet, reinstatement of the

6

companies using other individuals' personal information (such as birthdates and social security numbers) and updating registered agent information for the reinstated companies. Defendant knew that Marko used her work product when preparing and submitting fraudulent EIDL applications for client-applicants that were generally submitted to the SBA at the SIM Express office.

In total, defendant submitted to the SBA, and assisted Nikolic in preparing and submitting to the SBA, approximately 18 fraudulent EIDL applications, seeking EIDLs in amounts totaling approximately $2,625,000. A chart providing details regarding these fraudulent EIDL applications is attached as Exhibit 1.[1] At various times during the offense, defendant and co-schemers Marko and Maja Nikolic transmitted proceeds they obtained from the fraud scheme abroad to others. For example, defendant sent approximately $430,000 that she obtained from the fraud scheme to a relative in Serbia. Exhibit 2.

After she was charged by indictment, defendant was released on bond under terms that included home confinement. Defendant proffered with the government and caused fraud proceeds totaling $430,000 that she had transmitted out of the U.S. to be repatriated. Those funds were deposited with the Clerk of the Court on or about January 20, 2023.

---

[1] Lines 1 – 3 provide details relating to loan applications submitted by defendant for fraudulent applications submitted on behalf of companies (real or purported) in her name. Lines 4 – 18 provide details relating to loans in which defendant assisted Marko in preparing fraudulent EIDL applications submitted on behalf of others. The actual loss for fraudulent EIDL advances ($30,000) and EIDL loans ($1,050,000) paid by the SBA in which defendant participated in their preparation, including her own, is $1,080,000.

7

**III.     Imposition of sentence**

The parties agree that defendant's offense level is 21 and her criminal history category is I, resulting in an advisory USSG range of 41 – 51 months' imprisonment. The government requests that the Court impose a sentence at or slightly below the low-end of that USSG range. Such a sentence will recognize the seriousness of the offense, account for the history and characteristics of the defendant, provide just punishment for the offense, and deter the defendant and others from committing similar crimes.

First, it is difficult to overstate the seriousness of defendant's fraudulent conduct. Targeting government benefit programs is a serious offense. Such schemes, however, generally involve relatively low dollar amounts sought by individuals who are themselves struggling financially: *e.g.*, a food stamp beneficiary trading benefits for cash, or a dependent continuing to spend monthly SSI benefits paid to a deceased social security beneficiary.

The plundering of EIDL funds by defendant and her boyfriend, however, was notably profligate. Defendant and her co-schemers were business owners who enriched themselves at the expense of others more deserving of aid. Defendant wired hundreds of thousands of dollars abroad to her family in Serbia (Ex. 2) at a time when she and Marko were enjoying the spoils of the crime, which included a newly purchased Lamborghini (Dkt. 205, pp 9, 15). The excesses of the defendant's fraudulent conduct during an unprecedented national emergency are extraordinarily aggravating.

8

The history and characteristics of the defendant present further aggravation. Defendant had a supportive family in Serbia, with parents who assured she had access to well-regarded educational institutions in her home country. After concluding her education, defendant traveled to the United States. She arrived here with a visa, but remained unlawfully, obtaining resident status through a bogus marriage that deceived immigration authorities. PSR at 62. Defendant's upbringing and opportunities available in the United States enabled her to achieve a measure of financial and professional success that she likely once dreamed about. Turning her back on these successes to plunder Covid-19 benefits funded by U.S. taxpayers demonstrates selfishness and ingratitude that is deserving of significant punishment.

Finally, a sentence of imprisonment is necessary to adequately deter defendant and the public from committing similar misconduct in the future. Due to the nature of the rapidly spreading Covid-19 pandemic, Congress designed the EIDL program (and other Covid-19 relief measures like the Paycheck Protection Program) in a way that delivered financial aid quickly to those who qualified and needed it. In order to do so, the program relied heavily upon information and certifications provided by borrowers through their applications, which were submitted to the SBA via an internet portal. Little due diligence was conducted by the SBA before funds were transmitted to EIDL applicants.

Sadly, many chose to take advantage of these programs. Losses due to fraud have been estimated by the SBA to total $200 billion.[2] Because so much money was made available to so many, so quickly, swift and serious punishment must be imposed to demonstrate to the defendant and the general public that dire consequences will befall those who have engaged in such misconduct, or who may consider engaging in it in the future.

The government recognizes that defendant presents facts in mitigation worthy of consideration. Although the Court rightly should expect all defendants to make financial amends for their crimes, repatriation of funds sent abroad prior to sentencing is uncommon. Defendant will still owe a substantial amount of restitution, which likely will never be repaid due to her eventual deportation. But the Court should recognize defendant's repatriation of fraud proceeds to encourage others to do the same in the future. Defendant has remained compliant with her bond, has had no new negative encounters with law enforcement, and a network of friends and family that may diminish the likelihood of recidivism.

On balance, though, the aggravating circumstances greatly outweigh the factors in mitigation. To adequately recognize the seriousness of the offense, to administer just punishment, and to adequately deter similar unlawful conduct in the future, the Court should impose a sentence at or about the low-end of the applicable USSG range.

---

[2] https://www.sba.gov/document/report-23-09-covid-19-pandemic-eidl-ppp-loan-fraud-landscape

*Financial components of sentence*

Defendant participated in the preparation and submission of fraudulent applications for EIDL advances and loans in amounts totaling $1,080,000. Exhibit A. Defendant received an additional $600,000 of fraud proceeds directly from Marko and assisted him in laundering those funds. Government's Version of the Offense at 17-18. PSR, ¶ 28. As such, the government and Probation request that the Court impose restitution in the amount of $1,680,000. PSR, ¶¶ 28, 29. Upon entry of judgment, the Clerk of the Court will credit $430,000 against that figure, leaving a balance of $1,250,000. PSR, ¶ 28. A special assessment of $200 must also be imposed. The Court should not impose a fine due to defendant's inability to pay. The government anticipates it will ask the Court to dismiss the forfeiture allegation at sentencing.

**III.     Conclusion**

For the reasons set forth above, the government respectfully requests that the Court impose a sentence at or near the low-end of the applicable USSG range, restitution in the amount of $1,680,000,[3] and the terms of supervision identified by Probation in the PSR.[4]

>                       Respectfully Submitted,
>
>                       MORRIS PASQUAL
>                       ACTING UNITED STATES ATTORNEY
>
> By:   /s/ *Brian Hayes*
>       BRIAN HAYES
>       Assistant United States Attorney
>       219 S. Dearborn, 5th Floor
>       Chicago, IL 60604
>       Brian.Hayes@usdoj.gov

Dated: April 15, 2024

---

[3] As restitution is collected from defendant, the Court can direct restitution payments to the SBA as follows: Restitution Payments, Small Business Administration / Denver Finance Center, 721 19th Street, 3rd Floor, Room 301, Denver, CO 80202

[4] The government concurs in the conclusion of Probation that the recommended terms will further the goals of 18 USC § 3553 by deterring further criminal conduct by defendant, enhancing both officer and defendant safety, and to assist the defendant in engaging in responsible fiscal behavior while complying with the need to pay restitution to the SBA.

**CERTIFICATE OF SERVICE**

The undersigned Assistant United States Attorney hereby certifies that in accordance with Fed. R. Crim. P. 49, Fed. R. Civ. P. 5, LR 5.5, and the General Order on Electronic Case Filing (ECF), the attached document was served pursuant to the district court's ECF system as to ECF filers.

          By:    /s/ *Brian Hayes*
                   BRIAN HAYES
                   Assistant United States Attorney
                   United States Attorney's Office
                   219 South Dearborn, 5th Floor
                   Chicago, Illinois 60604
                   (312) 886-2447